Kenneth Earl Thomas was indicted for and convicted of the first degree assault with a pistol of his ex-wife, Marie Thomas. He was, subsequently, sentenced by the trial court to ten years' imprisonment.
At the close of the state's case, the appellant moved for a directed verdict because of an alleged lack of proof of a "serious physical injury" sustained by the victim, Marie Thomas.
The evidence is undisputed that on the night of July 6, 1981, at Bill's Lounge in Etowah County, the appellant fired into the back of Ms. Thomas at close range two shots from a .32 caliber pistol. The shooting *Page 965 
took place shortly after Ms. Thomas had given the appellant their daughter's clothes and had allegedly informed him that she did not wish to see him or the kids anymore, and after the appellant had watched her "hugging on" another man at the bar.
According to the appellant, he had had several beers prior to the shooting. He remembered that his ex-wife's actions, the incident with the clothes and her "hugging on" the other man, had angered him. (R. 161, 175). He also remembered walking outside to "cool off" (R. 161) and having the pistol in his hand before he returned to the bar. (R. 170). He stated, however, that he did not remember the shooting, itself. After going outside to "cool-off" the next thing he remembered was waking up in jail.
 I
Appellant's primary argument on appeal is that the state's evidence was insufficient to prove that Ms. Thomas, his ex-wife, received a "serious physical injury" as is required to support a first-degree assault conviction. See §§ 13A-6-20
(a)(1), -20 (a)(3), Code of Alabama 1975. He correctly cites the definition of "serious physical injury" in § 13A-1-2 (9), Code of Alabama 1975, as:
 "[a] physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
He contends that the state's own evidence confirmed the fact that all six gunshot wounds (caused by two bullets) in Ms. Thomas' back were superficial in nature and, therefore, were not "serious."
The state's medical expert, Dr. Miller, did testify that the victim's wounds, due to the angle of the bullets, were superficial and that the majority of the damage caused by the bullets was to subcutaneous (fatty) tissue. He stated that although these wounds were not "life-threatening" (R. 138) a slight deflection in the paths of the bullets could have caused paralysis or death by hitting a vital organ or blood vessel. (R. 142). Dr. Miller stated that one bullet had apparently bruised Ms. Thomas' spine and had traveled through nine inches of flesh across her back. (R. 138). The other bullet entered and exited the fleshy part of one side of her back (which naturally "bulges out a little bit") and reentered and exited the other side of her back. Dr. Miller stated that his treatment consisted of "excising" some of the damaged tissue and irrigating the wounds tracking the paths of each bullet. (R. 140).
Ms. Thomas, the victim, testified that the appellant swung her around slightly before he shot her in the back. She remembered that she almost "passed out" as an immediate result of the shooting. The paramedics transported her to the hospital where she recuperated for two days, after which she was confined to her house and told to remain in bed for two weeks. (R. 23). She stated that she still had recurring pain in her back from scar tissue pressing against nerves on her spine causing what she referred to as "the jerks." She further described the recurring pain in her back as a burning sensation as if someone was "sticking something hot to it," making her "jerk and real nervous." (R. 24). After describing the wounds, Ms. Thomas displayed to the jury the scars on her back (R. 24).
Contrary to appellant's assertions, this evidence was sufficient to support a jury determination that Ms. Thomas' injuries had caused "serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of [a] bodily organ," as is necessary for a first degree assault conviction in this instance. See, People v. Rumaner, 45 A.D.2d 290, 357 N.Y.S.2d 735
(1974), and Brown v. State, 605 S.W.2d 572 (Tex.Cr.App. 1980); compare, Goode v. State, 408 So.2d 198 (Ala.Cr.App. 1981) (no evidence in support of third degree assault.) Since the question of whether or not the victim received a "serious physical injury" is a factual determination properly reserved for the jury and the evidence is sufficient in this instance to support the jury's guilty verdict, said verdict will not be disturbed on *Page 966 
this appeal. Woods v. State, 344 So.2d 1225 (Ala.Cr.App. 1976), cert. denied, 344 So.2d 1230 (Ala. 1977), and cases cited therein.
At trial the jury heard the medical expert's description of the wounds and the victim's account of her recurring pain and suffering. The jury had seen the scars left on the victim's back. The jury had been adequately instructed with reference first, second, and third degree assault and the distinguishing characteristics of each. (R. 189-194). The jury was, therefore, well informed and its verdict must stand.
 II
The appellant also contends that the trial court erred in refusing to order the victim, Ms. Thomas, to bring her daughter, Luann Thomas (who is also the appellant's daughter), to the trial to testify on appellant's behalf. We disagree.
This issue was first raised only after the trial had begun and after the victim had testified. The appellant made a special request (R. 64) that the trial court order the victim, Marie Thomas, to bring her six-year-old daughter to court for the sole purpose of impeaching part of the victim's (Marie's) testimony which the appellant claimed had a bearing on his motive for shooting her. The trial court refused appellant's request because appellant had made no effort to subpoena this "missing witness," even though he apparently knew where she was (R. 66), and because the appellant did not adequately demonstrate the propriety and necessity of such an order. [See,Goodrum v. State, 402 So.2d 1103 (Ala.Cr.App. 1981), and cases cited therein.] As a compromise the trial court did agree to have the circuit clerk ask the sheriff to expedite delivery of a subpoena to the Blount County Sheriff (Luann was reportedly in Blount County) for delivery to Luann Thomas. (R. 73). Finally, the trial court refused to authorize a writ of attachment for Luann because the expected testimony concerned immaterial and collateral issues and, thus, did not justify the unreasonable delay of the trial. (R. 100-101).
The appellant, eventually, sought a writ of attachment through the circuit clerk's office, but this process failed to produce Luann before the trial ended.
Appellant's assertions of error in this instance are without merit. The extraordinary compulsory process he sought from the trial court was entirely premature, and was, in any event, a matter within the sound discretion of the trial court. Martinv. State, 125 Ala. 64, 28 So. 92 (1900); Palmer v. State,165 Ala. 129, 51 So. 358 (1909); Godfrey v. State, 383 So.2d 575
(Ala.Cr.App.), cert. denied, 383 So.2d 579 (Ala.), cert. denied, 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980);Weaver v. State, 401 So.2d 344 (Ala.Crim.App. 1981), and cases therein cited; Goodrum v. State, supra, and cases cited therein. The indispensable missing witness was appellant's own daughter. He knew of her existence and her whereabouts prior to trial, yet he made no pre-trial efforts to have her subpoenaed as a witness. Godfrey v. State, supra. Except for appellant's allegations that she would have (and a few comments by Ms. Thomas that she would block appellant's attempts to subpoena Luann because she did not want Luann, a six-year-old, put through such an ordeal) there is no evidence in the record that Luann avoided service of any process.
Moreover, it is extremely doubtful that Luann's expected testimony, even if the trial court found Luann, a six-year-old, competent to testify, would have exonerated this appellant. SeeScott v. State, 34 Ala. App. 519, 41 So.2d 630 (1949); Autrey v.State, 44 Ala. App. 53, 202 So.2d 88 (1967), cert. denied,390 U.S. 1030, 88 S.Ct. 1422, 20 L.Ed.2d 287 (1968); Godfrey v.State, supra. Appellant contended that Luann would tell the jury that her mother "slept with" the man appellant saw her "hugging on" the night of the shooting and that she had related such information to appellant through relatives prior to the shooting. Appellant's theory was that his prior knowledge of such alleged behavior by his ex-wife was a mitigating factor which would have persuaded the jury to return a verdict of second or third degree assault. Such a theory in this instance is unfounded. *Page 967 
For the foregoing reasons, this cause should be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.