The appellant, Charles A. Haslerig, was found guilty of the offense of assault in the first degree and sentenced to ten years' imprisonment. From said conviction and sentence, this appeal follows. Appellant raises two issues on appeal.
 I
The first issue raised by appellant is that the verdict of the jury is "contrary to the law and weight of the evidence in this case." In particular, appellant asserts that the State failed to prove that the victim suffered "serious physical injury" as required pursuant to the provisions of § 13A-6-20
(a)(1), Code of Alabama (1975). Under Alabama law, "serious physical injury" is defined as follows:
 "Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." § 13A-1-2 (9); Code of Alabama (1975).
Although the appellant submits otherwise, the evidence clearly indicates that the State proved the element of "serious physical injury" which would sustain the conviction of first degree assault.
Briefly stated, the facts indicated that on the evening of May 12, 1984, the victim met a girl in Huntsville, Alabama, went "night clubbing" with her, went with her to her motel room, paid her $15 and had sexual intercourse. At some point, the female companion left the motel room to investigate a "strange girl" that she saw outside and, when she returned to the motel room, the appellant was with her. The appellant pulled out a gun, ran over to where the victim was seated in a chair, and shot him. On the night in question, the victim was accompanied by two friends who testified to essentially the same facts as had the victim.
Evidence presented by the appellant indicated that the appellant was called to the woman companion's motel room in order to assist her and that when the victim was asked to leave her room, he refused to do so. These witnesses indicated that when the appellant attempted to hit the victim the gun went off. They also indicated that the victim ran out of his room and they did not know that the victim had been shot. When the appellant testified, he stated that he was "worried and nervous" when his friend told him that two men were in her room and she needed help. According to the appellant, he asked the victim to leave the motel room at least six times and then "I swung the gun at him and it kinda turned and went off and I honestly did not know this guy was hurt." According to the appellant, the victim got up and said "I am gone." In a statement which the appellant gave to the Scottsboro police department after being advised of his Miranda rights, the appellant stated that he hit the victim in the head with a gun and it went off.
According to the victim, he heard the pistol discharge and felt a pain in his chest; he realized that he was bleeding and began to hold his chest. He was able to summon a friend, who took him to the Huntsville Hospital. The victim was admitted to the hospital on Sunday morning and was not released until Tuesday evening. During that time, he had an "I.V." in his arm and he could not eat anything. The bullet hit the victim's sternum and exited through his left shoulder. The victim testified that he was in a "great deal of pain" and had to take pain killers because it was so painful. While he was in the Huntsville Hospital, he was X-rayed and required to remain for observation. Although he was discharged on Tuesday, the victim testified that when he returned to Atlanta[1] he could not sleep, so he went to the Henry County General *Page 198 
Hospital. After receiving medication, he was required to have someone stay with him for approximately three weeks before he could "stay on my own." The victim was unable to work for five weeks because he was "still very weak and it was still painful." The victim testified that he had never "owned" a weapon and, in fact, had never even touched a weapon. The victim also testified that he is approximately 5 feet 5 inches tall and weighs approximately 130 pounds. The victim testified that, because of a broken rib, his lung might be punctured. Additionally, the victim had two scars as a result of the entry and exit wounds and these were shown to the jury. According to the victim, for the next four weeks after the shooting, "sleeping was impossible because my chest was so painful and I couldn's sleep on this side." When he went to the hospital in Georgia, he was told that he would have to stay with somebody "all the time to be observing just in case I sleep on this side and that it could go ahead and bust the lung."
Walter John Schoepfle, M.D., thoracic surgeon, testified that he examined the victim the morning of May 13, 1984. At that time, the victim indicated that he had some discomfort and was suffering from a gunshot wound. According to the physician's notes, the victim received a sleeping pill. Although Doctor Schoepfle testified that the wound would not necessarily "form a gross disfigurement," there was a possibility that the victim would have "a lot of scar tissue and so forth." When asked if the victim had been in "any substantial risk of death," Doctor Schoepfle stated "in retrospect, no." Since the witness did not have the opportunity to follow up with an examination of the victim, he testified that it would be "hard to say" what type of long term disability the victim would have. However, he admitted that it would be "impossible to predict how long he would have pain and discomfort from the wound."
In Dr. Schoepfle's professional opinion, discharging a weapon similar to the one in the present case within a space of three to ten feet would create a substantial risk of death. The witness testified that it would not be unusual for a patient with "this sort of injury" to have a "fair amount of discomfort for up to a couple of months afterward." The main limitation in a case like this would be pain. The witness additionally testified that the bullet was within approximately one and one-half inches of the heart. If the bullet had gone an inch and half further into the chest wall, it would have made the situation a "lot worse."
From the above, it is apparent that there was sufficient evidence presented by the State to support the jury verdict. As a general rule:
 "A verdict of conviction cannot be disturbed on the grounds of insufficiency of the evidence `. . . unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it was wrong and unjust.' [Citation omitted.]" McMillan v. State, 432 So.2d 508, 509 (Ala.Cr.App. 1983).
In the present case, it is apparent that the testimony presented by the State was sufficient to present a jury question as to whether the victim sustained "serious physical injury." White v. State, 448 So.2d 421, 425 (Ala.Cr.App. 1983). Thus, the trial court did not err when it denied the defense motion to exclude the evidence.
In a case similar to the present factual situation, this Court concluded that the question of whether or not a victim receives a "serious physical injury" is a "factual determination properly reserved for the jury." Thomas v. State,418 So.2d 964, 965 (Ala.Cr.App. 1982). Here, as in Thomas, the jury heard the physician's explanation of the wounds and the victim's account of his pain and suffering as a result of the gunshot wound. Additionally, the jury had the opportunity to observe, in the present case, as in the Thomas case, the victim's scars where the bullet had entered and exited the victim's body. Thus, the evidence supported a jury verdict and said verdict will not be disturbed on appeal. Id. In Thomas, the medical testimony presented *Page 199 
at trial indicated that the victim's wounds, due to the angle of the bullet, were "superficial" and were "not life threatening." However, a "slight deflection in the paths of the bullets could have caused paralysis or death by hitting a vital organ or blood vessel." Id. The evidence in this case is, in many ways, similar to the evidence presented in the Thomas
case. Here, as in Thomas, the State presented a prima facie case of first-degree assault.
 II
The second issue raised on appeal concerns the possible error which may have occurred when the trial court indicated to the jury that certain charges had been requested by the appellant. However, as appellant admits in his brief, no objection or exception was made to the alleged error on the part of the trial court. Thus, appellant failed to properly preserve this issue for review. Additionally, the error, if any, was harmless, since there was no prejudice to the appellant as a result. Only two charges were given subsequent to the trial court's statement and they were submitted to be "a correct statement of the law." The charges so referred to are as follows:
 "I charge you that if you believe that Charles Haslerig was a bona fide guest in the motel room where this incident occurred, that he had the same right to defend himself or another from any person who was not a lawful occupant as he would have had in his own home."
 "If you find that the defendant's culpability does not rise to the level of the four counts in the indictment, you may still find him guilty of assault in the third degree if you find that he caused physical injury to Mr. Kamau through criminal negligence and with a deadly weapon."
Obviously, there was no prejudice to the defendant as a result of the trial court's reference to the fact that the two charges quoted above had been given at "the request of the attorney for the defendant."[2] Thus, there was no error.
For the reasons outlined above, it is apparent that the decision of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Note that the victim was from Atlanta, Georgia.
[2] As a purely practical matter, it would additionally appear obvious that these charges would not have been requested by the prosecution.
[EDITORS' NOTE: PAGES 200-205 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 624