Sometime during the Fourth of July holiday, 1984, the Coleman Business Equipment Company in Dothan was burglarized. The burglar apparently entered the building through an exhaust fan in the store's cleaning room. Ted Bridges, the vice-president of the company, was the first person to arrive at the store on the morning of July 5, 1984. Upon entering the cleaning room he noticed that the blades on the exhaust fan had been twisted inward, creating an opening large enough for a person to crawl through. Greasy, black, handprints were clearly discernible a few feet from the fan. Similar prints were found on a filing cabinet in another room. After discovering that money was missing from the store's petty cash box and that several small pieces of office equipment were gone, Bridges contacted the Dothan police. Sergeant Jackie Mendheim, who was sent to investigate the burglary, lifted several palm prints from the ink stained filing cabinet. He also took various pieces of paper that the burglar had apparently thrown from the petty cash box and placed them in a plastic bag. These items were later sent to the Fingerprint Division of the Alabama Bureau of Investigation for analysis. Later, it was discovered that the appellant's fingerprints matched those taken from the scene of the crime. The appellant was tried in the Circuit Court of Houston County and found guilty of burglary in the third degree. He now appeals.
 I
The appellant contends that the state failed to establish a proper chain of custody prior to the introduction of exhibits 3 through 11. State exhibits 3 through 7 consisted of various receipts and other papers found lying next to the petty cash box. The latent fingerprints taken by Sergeant Mendheim from the burglarized filing cabinet were denominated as state exhibits 8 and 9. State exhibits 10 and 11 were palm prints taken from the appellant at the time of his arrest. Sergeant Mendheim testified that exhibits 3 through 9 were constantly in his care and custody from the time he obtained them from the crime scene until the time he sealed them in a manila envelope. Mendheim stated that he addressed the envelope to Gloria Walters, an employee with the Latent Print Unit of the A.B.I., and later gave the envelope to his secretary to mail.
Gloria Walters testified that she received a sealed envelope from Sergeant Mendheim containing the items denominated at trial as state exhibits 3 through 9. She stated that these items were thereafter constantly within her care, custody and control until she placed the items in an envelope, sealed the envelope, and mailed it to Sergeant Mendheim. Upon examining the exhibits at trial, Walters stated that they were in substantially the same condition as when she had mailed them.
Sergeant Mendheim, during his earlier testimony, stated that a few days after sending the evidence to Ms. Walters, he received a sealed envelope from her containing those same items. The envelope was placed in a wire basket in his office along with other incoming mail. According to Mendheim, exhibits 3 through 9 were in substantially the same condition as when he had sent them to Walters for analysis. Sergeant Mendheim stated that he thereafter placed the items in his personal file and returned the file to the police filing cabinet. Although Mendheim said that other officers had access to the filing cabinet, he examined exhibits 3 through 9 at trial and found that they were in the same condition *Page 1219 
as when he originally placed them in the file.
The appellant maintains that this cause should be reversed due to three "breaks" in the chain of custody. First, he contends that a fatal break occurred because the state failed to establish that the envelope containing exhibits 3 through 9 was ever mailed. A similar break in the chain of custody occurred, argues the appellant, because no one testified that the envelope that was placed in Sergeant Mendheim's wire basket was actually received from the post office.
The purpose for requiring that chain of custody be established is to show a reasonable probability that there has been no tampering with an item of evidence. Gwin v. State, 425 So.2d 500
(Ala.Cr.App. 1982). The chain of custody need not be proven to an absolute certainty. Sims v. State, 428 So.2d 162 (Ala.Cr.App. 1982). Taking the appellant's argument to its logical extent would necessitate calling each and every postal employee who handled the envelope. Such a procedure is not practical and is not necessary to insure the integrity of the evidence. The manila envelope was sealed before it was given to the secretary to be mailed. We believe that Ms. Walters' testimony that she received a sealed envelope containing the very items that Sergeant Mendheim placed in the envelope was sufficient to establish the authenticity of the evidence. Even assuming, arguendo, that a break in the chain of custody occurred due to the failure of the secretary to testify that she mailed the envelope, such a break would not warrant reversal. A minor break in the chain of custody goes only to weight and not admissibility. United States v.Clark, 732 F.2d 1536 (11th Cir. 1984) (failure of evidence custodian to testify that he received package in mail goes to weight and not admissibility); Sims v. State, 428 So.2d 162
(Ala.Cr.App. 1982) (failure of lab employee to testify that he accepted pistol allegedly used in crime and that he later gave the gun to lab analyst held not to warrant reversal).
The appellant also contends that the integrity of the evidence was compromised because it was placed in an unlocked filing cabinet to which several police officers had access. Ms. Walters had already performed her fingerprint comparison before the objects were left unattended in the police filing cabinet. In reviewing the sufficiency of the chain of custody in drug cases, this court has stated that "the law is concerned with tracing the integrity of the substance only up through the completion of the analysis." Congo v. State, 409 So.2d 475, 479 (Ala.Cr.App. 1982). Likewise, we are concerned here with establishing the integrity of the evidence up through the fingerprint analysis and comparison. This analysis was made before the items were placed in the filing cabinet. Any alteration or substitution of the items after Ms. Walters finished her analysis and comparison would, therefore, have been immaterial. Congo v. State,409 So.2d 475, 479 (Ala.Cr.App. 1982). Moreover, Sergeant Mendheim testified that exhibits 3 through 7 were in substantially the same condition as when he originally placed them in the filing cabinet.
The appellant also contends that state exhibits 10 and 11, palmprints of the appellant taken at the time he was arrested, were not properly accounted for by the state. Isaiah Savage, an employee of the Dothan Police Department, testified that he took the appellant's prints and placed them in a wire basket, along with the fingerprint cards of other individuals arrested that day. The appellant's name was written on the upper left portion of the card. Savage stated that it was usual procedure to give the cards to Diane Britt to mail to the Fingerprint Division of the A.B.I., although he had no independent recollection of these particular cards. Walters testified that she received exhibits 10 and 11 and compared them to the prints found on exhibits 3 through 9. An employee of the A.B.I. later mailed exhibits 10 and 11 back to the Dothan Police Department.
The appellant contends that a break in the chain of custody occurred because Britt *Page 1220 
failed to testify that she mailed the fingerprint cards. For the reasons previously stated, such a contention has no merit. See,United States v. Clark, 732 F.2d 1536 (11th Cir. 1984). The appellant also maintains that exhibits 10 and 11 were not properly accounted for because they were placed in a basket with the fingerprint cards of several other persons. Numerous police officers, it is alleged, had access to the fingerprint cards during the time the cards were in the basket. Although the ideal practice would be for one person to maintain exclusive and constant control of the fingerprint cards, these rules are made for practical people who deal with such evidence as part of day to day routine. The chain of custody requirements aim at a "reasonable probability" that there has been no tampering; they are not intended as an obstacle course or a walk through a legalistic mine field.
 "To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain." Sexton v. State, 346 So.2d 1177, 1180 (Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala. 1977).
Here, the appellant's name was placed upon each of the fingerprint cards immediately after the prints were taken. Mr. Savage also testified that after making the prints he signed the cards. After examining the fingerprint cards at trial, Savage stated that the signature on each of the cards was his and that the cards appeared to be in substantially the same condition as when he had placed them in the wire basket. This procedure establishes, to a reasonable probability, that the cards were not altered or substituted.
 II
The appellant also maintains that there was insufficient evidence to sustain his conviction. He argues that the mere presence of his fingerprints inside the burglarized establishment does not establish his guilt beyond a reasonable doubt. In support of his position, he cites our recent decision in Blackmonv. State, 462 So.2d 1045 (Ala.Cr.App. 1985). In Blackmon, a man carrying a sawed-off shotgun entered a Dothan bank and walked up to one of the bank tellers. He informed the teller that he was robbing the bank and demanded that she give him money. The robber then placed a cardboard box on the counter, which he claimed contained a bomb. Appellant Blackmon's fingerprint was later found on this cardboard box. Although the evidence showed that Blackmon was not the man who committed the robbery, he was later charged with aiding and abetting the robber. The sole evidence connecting Blackmon with the crime was his fingerprint on the box. In reversing Blackmon's conviction, we stated:
 "Clearly, the mere presence of the appellant's fingerprint on the box does not necessarily lead to the conclusion that the appellant `aided and abetted' in this robbery. Cardboard boxes are very common and frequently handled by many persons, including shipping, for various purposes. It is certainly reasonable to assume that the cardboard box was innocently handled by the appellant some time before it came into the robber's actual possession." Blackmon, 462 So.2d at 1047.
The present case is, however, factually distinct from Blackmon
and similar cases cited by the appellant. The appellant's fingerprints were not found on an easily transportable item such as a cardboard box. Rather, his fingerprints were found at a place where he had no legitimate reason to be and on things which he could not have innocently handled. Considering the evidence in the light most favorable to the state, it was sufficient to support the jury's verdict of guilt beyond a reasonable doubt.
AFFIRMED.
All the Judges concur. *Page 1221