This appeal follows a conviction for the offense of burglary in the third degree, in violation of § 13A-7-7, Code of Alabama
(1975), and sentence of four years' imprisonment. For the reasons outlined below, we affirm.
On the evening of March 29, 1983, the residence of Catherine Miller was burglarized. Prior to the burglary, a police officer observed the appellant walking toward Mrs. Miller's house. After the burglary, police officers were summoned and observed the appellant approximately 75 yards from the scene of the crime. After an investigation, the entry was determined to have been through a broken window in Mrs. Miller's bedroom. The appellant's fingerprints were found inside the sill of the bedroom window, near the area where the window had been broken. The prints were positioned in such a manner as to indicate that they were made by a person who was "outside entering the house." Testimony was presented by the appellant to explain the presence of the fingerprints. According to this testimony, the appellant, as well as some of his friends, had the opportunity to be inside Mrs. Miller's bedroom when they visited the home at the invitation of Cecil Horton, a boarder at the Miller residence. On one of these occasions, according to the appellant, he raised a window in the bedroom.
The following three issues are raised: (1) whether the trial court erred when it identified the appellant as the party who submitted a specific jury charge; (2) whether the trial court improperly allowed the prosecution to make certain statements to the *Page 1387 
jury during closing arguments; and (3) whether the State presented a prima facie case of burglary in the third degree.
 I
The first issue concerns the propriety of a statement made by the trial court. At the conclusion of the oral charge, the trial court asked defense counsel whether he had any objection to the charge. Defense counsel presented a handwritten jury charge to the trial court and the trial court stated: "This is a charge requested by the defendant and is a correct statement of the law." According to the appellant, the trial court's remark violated that portion of Rule 14, Temporary AlabamaRules of Criminal Procedure, which provides that a requested jury charge "shall be read to the jury without reference as to which party filed the request." According to the appellant, the trial court's identification of the appellant as the party who requested the charge constitutes reversible error.
Contrary to the appellant's position, however, it is not apparent that the trial court's statement constitutes reversible error. Additional reference to Rule 14, Temp.Ala.R.Crim.P., provides, in pertinent part, as follows:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection." (Emphasis added.)
Because the appellant did not make such an objection, this issue has not been preserved for appellate review. Thompson v.State, 473 So.2d 1205, 1208-09 (Ala.Cr.App. 1985).
Appellant argues, however, that he was not required to object because the "error" was not in the law, as set out in the given charge, but "in the fact that the defendant was identified by the judge." Additionally, according to the appellant, no objection was required because "[n]othing that the judge may have said to the jury could have cured this error." Again, however, appellant's argument is without merit. In Haslerig v.State, 474 So.2d 196, 199 (Ala.Cr.App. 1985), defense counsel made no objection when the trial court informed the jury that certain charges had been requested by the defendant. This court in Haslerig concluded that the failure to object meant that the issue had not been preserved for appellate review. Additionally, the error, if any, in Haslerig was "harmless" because the appellant did not show that he was prejudiced as a result of the trial court's statements. Here, as in Haslerig, the failure to object and the failure to establish prejudice require that this issue be decided adversely to the appellant.[1]
 II
The appellant also argues that the State's attorney made "improper" statements during his cross-examination of a defense witness and also during closing arguments. During the cross-examination of a defense witness, the following occurred: *Page 1388 
 "[State's Attorney]: Timothy Wayne Rollins, is [he] called Skinny or is he skinny?
"A Tim Rollins? Sorta.
 "Q Tim has done about seven years for burglary, hasn't . . .
"[Defense Attorney]: Objection.
"THE COURT: Sustained."
It is not apparent that the above isolated exchange constitutes reversible error. As an initial consideration, it is apparent that there was no adverse ruling from the trial court. Thus, there is nothing for this court to review. Breedlove v. State,482 So.2d 1277 (Ala.Cr.App. 1985). Additionally, "it is not obvious that the `mere propounding' of the question . . . resulted in any error prejudicial to the rights of the accused." Id.
According to the appellant, however, even though the trial court sustained the objection, the prosecution's question improperly implied that a defense witness had been convicted of a felony offense. This inference, according to the appellant, was further established by the following statement made during closing argument:
 "[State's Attorney]: The evidence suggests to you that he leaves with at least one and probably two other persons. One of those persons, I submit to you, you heard testify that he was just the type of individual . . .
 "[Defense counsel]: Objection, Your honor, there was not any testimony as to that.
"THE COURT: I'm sorry."
Based on this testimony, it is not apparent that reversible error occurred.[2] Contrary to the appellant's position, the State's unfinished sentence does not appear to be improper argument. Even assuming that the statements were improper, defense counsel's timely objection prevented the prosecution from continuing this line of argument.[3] Thus, there was no error.
 III
The third issue concerns the sufficiency of the evidence. According to the appellant, the only evidence presented at trial that even "remotely" connected him to the crime was his close proximity to the scene of the crime immediately after the burglary and the presence of his fingerprints on the window frame near the point of entry. According to the appellant, the fact that no one actually saw him inside the home on the night of the burglary provides a "reasonable hypothesis" that he is not guilty of the crime.[4] *Page 1389 
Under Alabama law, circumstantial evidence is competent evidence. In particular "`[c]ircumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused.'" St. John v. State, 473 So.2d 658,660 (Ala.Cr.App. 1985), quoting Casey v. State, 401 So.2d 330,331 (Ala.Cr.App. 1981). This court in St. John also stated that the following "test" should be applied in cases where circumstantial evidence, as opposed to direct evidence, is the basis for the conviction:
 "`The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.'" Id., quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
Whether the circumstantial evidence excludes, "`to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court.'" 473 So.2d at 660-661, quoting Cumbo v. State,368 So.2d 871 at 875.
In an excellent discussion of the role of appellate courts in reviewing "sufficiency of the evidence" cases, this court, per Presiding Judge Bowen, in Granger v. State, 473 So.2d 1137,1139 (Ala.Cr.App. 1985), stated as follows:
 "`The role of appellate courts is not to say what the facts are. Our role, . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches `a clear conclusion that the finding and judgment are wrong.' Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). `The rule is clearly established in this state that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust.' Bridges v. State, 284 Ala. 412, 420, 225 So.2d 821 (1969). Even though an appellate court should `marvel that a jury would convict upon such flimsy proof,' it is `not permitted to pass upon the weight or sufficiency of the evidence, where it may yield any rational inference of guilt.' Toles v. State, 170 Ala. 99, 100, 54 So. 511 (1911). A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). `[W]here there is ample evidence offered by the State to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.' Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358
(1960).
 "This court must revise and overturn the verdicts of juries `where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach the conclusion that the finding and judgment *Page 1390 
are wrong.' Hunter v. State, 34 Ala. App. 563, 567, 41 So.2d 637 (1949)."
According to the evidence presented by the State, the appellant's fingerprints were positioned in such a manner as to indicate that he was "outside of the house entering into the house." The window was approximately six feet from the ground; this fact precluded the possibility that the appellant could have had some "casual contact" with the window from the outside. (Additionally, the appellant did not testify that he had touched the window from the outside.) Testimony presented at trial tended to show that: (1) the appellant was observed near the scene of the crime shortly before and shortly after the crime had been committed; (2) the appellant's fingerprints were found at the "point of entry" of the burglarized home; (3) the appellant's fingerprints were positioned in such a manner as to indicate that he was entering the home at the time the prints were made; and (4) the appellant's witnesses merely testified that he was inside the bedroom at some point. Under the facts presented in this case, the "illegal and unauthorized entry" by the appellant into Ms. Miller's home was the only "reasonable explanation" for the presence and position of the appellant's fingerprints. Davis v. State, 418 So.2d 959, 961
(Ala.Cr.App. 1982).
"Fingerprints are strong physical evidence, and they frequently form the basis used to identify those present at the scene of a crime." Nichols v. State, 462 So.2d 992, 994
(Ala.Cr.App. 1984). This court in Nichols also stated as follows:
 "Although it is recognized that fingerprint and palm print evidence is circumstantial or opinion in nature, the basic reason for the universal recognition of its admissibility to establish identity is its great reliability. [Citations omitted.]
 "The weight to be given evidence of the correspondence of fingerprints and palm prints, where offered to prove the identity of the accused as the person committing a crime, is for the determination of the jury in light of all the surrounding facts and circumstances. [Citation omitted.]"
Fingerprint evidence is especially incriminating where, as in the instant case, the accused's fingerprints are found "at a place where he had no legitimate reason to be and on things which he could not have innocently handled." Blanco v. State,485 So.2d 1217 (Ala.Cr.App. 1986).
In the case sub judice, the location and position of the appellant's fingerprints, as well as his proximity to the crime, were facts which were used to establish the appellant's guilt. The discovery of the appellant's fingerprints on the inside of the bedroom window, positioned in an "incoming pattern," when weighed with the remainder of the State's evidence, established sufficient evidence of the appellant's guilt. Gratton v. State, 455 So.2d 189, 190 (Ala.Cr.App. 1984). "The identity of the accused may be established by the discovery of his fingerprints at the scene." Id.
Although defense witnesses attempted to explain the presence of the appellant's fingerprints on the inside of the bedroom window, this testimony presented a conflict in the evidence, which was properly presented to the jury for its consideration.[5] As this court stated in Agee v. State,470 So.2d 1331, 1332 (Ala.Cr.App. 1985):
 "The jury is so positioned as to be able to test the credibility of witnesses and their decision will not be disturbed on appeal. [Citation omitted.] `The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than *Page 1391 
one rational conclusion, are for the jury alone.' [Citations omitted.] Any conflicts in the evidence are for the jury to resolve. [Citations omitted.] The fingerprint of the appellant found on the [electrical] tape [connected to the bomb] was a circumstance that was properly considered by the jury with all the other circumstances on the question of appellant's guilt. [Citation omitted.]"
The mere fact that no one testified at trial that the appellant was actually observed committing the crime does not warrant a reversal of his conviction.[6]
AFFIRMED.
All the Judges concur.
[1] In a recent case concerning the alleged impropriety in certain statements made by the trial court during the charges to the jury, this court noted that "each case of allegedly improper remarks by a trial judge must be judged on its own peculiar facts." Gamble v. State, 480 So.2d 38 (Ala.Cr.App. 1985). The following general rules were also stated:
 "`The entire charge must be considered and if upon the whole no prejudice to defendant intervened no reversal should be entered.' Mosley v. State, 241 Ala. 132, 136, 1 So.2d 593
(1941). `[T]he portion of the charge here excepted to should be construed in connection with the whole charge of the court.' Ex parte Cowart, 201 Ala. 525, 526, 78 So. 879
(1918). . . . `While a particular remark by the trial judge may be open to question, in order for it to amount to the grossly improper error requiring reversal, it must have influenced the result of the case.' Lokos v. State, 434 So.2d 818, 823 (Ala.Cr.App. 1982), aff'd, Ex parte Lokos, 434 So.2d 831 (Ala. 1983); McCovery v. State, 365 So.2d 358
(Ala.Cr.App. 1978)." Id.
When the jury charge in the present case is construed as a whole, it is obvious that the trial court's statement does not justify a reversal of the conviction. Jackson v. State,412 So.2d 302 (Ala.Cr.App. 1982).
[2] It is also not apparent that defense counsel obtained a ruling from the trial court. Because the appellant failed to invoke a ruling from the trial court, there is nothing for this court to review. Gross v. State, 395 So.2d 485, 488
(Ala.Cr.App. 1981); Ragsdale v. State, 448 So.2d 442, 444
(Ala.Cr.App. 1984); Breedlove v. State. 482 So.2d 1277
(Ala.Cr.App. 1985). The mere fact that the trial court stated "I'm sorry" does not imply, contrary to the appellant's position, that the trial court was "sanctioning or condoning" improper action on the part of the prosecution.
[3] In a recent case, this court, per Judge Patterson, stated that we will not "resort to speculation to find some factual predicate for reversal." Jackson v. State, [Ms. 6 Div. 767, April 9, 1985] (Ala.Cr.App. 1985). In concluding that the trial court did not commit reversible error when it denied a defense request concerning press coverage of the trial, this court inJackson stated as follows:
 "To make a finding of prejudicial error upon the facts of this cause would require us to totally disregard the presumption in favor of the trial court's ruling and to resort to speculation to find some factual predicate for reversal. `Error is not presumed on appeal and this court will not reverse a conviction where the alleged error is founded on bare suspicion and surmise.' Kimbrough v. State, 429 So.2d 1143, 1146 (Ala.Cr.App. 1983). See also Duncan v. State, 88 Ala. 31, 7 So. 104 (1889); Nolen v. State, 35 Ala. App. 249, 45 So.2d 786 (1950)." Id.
In the present case, the alleged error is based upon "suspicion and surmise" and thus does not constitute reversible error.
[4] Of course, a conviction cannot be based on "surmise, speculation and conjecture." Sorrell v. State, 249 Ala. 292,294, 31 So.2d 82, 84 (1947), quoted in Calloway v. State,473 So.2d 601, 603 (Ala.Cr.App. 1985). As this court, per Presiding Judge Bowen, stated in Calloway.
 "`The test of the sufficiency of circumstantial evidence is whether the circumstances as proved, produce a moral conviction to the exclusion of all reasonable doubt of the guilt of the accused, whether they are incapable of explanation upon any reasonable hypothesis consistent with his innocence . . . no matter how strong may be the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by the full measure of proof the law requires.'" Jarrell v. State, 255 Ala. 128, 129, 50 So.2d 774, 775 (1949).
In Calloway, the appellant's conviction for first degree robbery was reversed and rendered because of the "gaping hole" in the chain of circumstances that tended to connect the appellant with the offense.
In the present case, however, there was a complete chain of circumstances which connected the appellant to the crime and it is apparent that the jury disbelieved the appellant's version of the facts. "Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court." [Citation omitted]. St. John v. State, 473 So.2d 658,661 (Ala.Cr.App. 1985).
[5] The mere fact that the appellant was able to present witnesses who established a conflict in the evidence does not warrant a reversal of his conviction. Both Ms. Miller and Mr. Horton, the state's witnesses testified that the appellant had never been in the bedroom where his fingerprints were found. Even assuming that the appellant had obtained legitimate access to the bedroom while he was visiting Mr. Horton, the position of the identifiable set of fingerprints showed that the prints were made by someone entering the bedroom from the outside. For these reasons, the evidence was legally sufficient to uphold the conviction. Blanco v. State, 485 So.2d 1217 (Ala.Cr.App. 1986).
[6] The present case is distinguishable from Williams v. State,468 So.2d 99 (Ala. 1985). In Williams, the sole link between the accused and the crime was the presence of his fingerprints on certain packages of film. According to the evidence presented at trial in Williams, others had access to the film and thus the circumstantial evidence was insufficient to uphold the conviction. In this case, however, there was no reasonable explanation for the fact that the appellant's fingerprints indicated that he was entering the house from the outside of the window. The only reasonable inference from the evidence presented at trial was that the appellant actually committed the crime.
 *Page 237