MONTIEL, Judge.
The appellant, Richard Jones, was convicted of assault in the first degree, in violation of § 13A-6-20, Code of Alabama 1975. He was sentenced to 16 years’ imprisonment.
Sharon Pugh, the appellant’s ex-wife, testified that in the early morning hours of March 9, 1990, she heard an automobile drive into her driveway. She says she looked out her window and recognized the appellant'as the driver of the car. She testified that she began to panic and that she woke James Kelly, the victim, who was asleep in her bedroom. Pugh testified that Kelly walked to the front door and that as Kelly started to open the door, the door “flew open” and she then heard shots.
Kelly testified as follows. When he opened the door, the appellant stated, “Jim-bo, it’s time for you to go home.” (R. 81.) The appellant then aimed the gun he was carrying and fired a shot. This bullet missed Kelly. Kelly testified that he received powder burns on his head and eye as a result of this shot. Kelly fell backwards onto the floor. The appellant then came into the residence and proceeded to fire a second time. Kelly grabbed at the gun and was shot in the arm. Kelly then grabbed the appellant and stood up. They continued to struggle. The appellant fired a third and a fourth shot. The third shot missed Kelly, but the fourth shot struck him in the leg. Kelly fell to the floor and pulled the appellant with him. He got the gun away from the appellant and attempt: ed to fire at the appellant, but the gun did not fire. Kelly then threw the gun down the hall. Kelly was still on the floor when the appellant attacked him again. During this struggle the appellant bit Kelly in the ear. Kelly lost part of his ear as a result. At this point Pugh began to scream that the appellant had a knife. Kelly instructed Pugh to get a chair and hit. the appellant. Pugh managed to hit the appellant and get *130 him off of Kelly. The appellant got up, went down the hall, and retrieved his gun. He then went back to the front door. Pugh pushed the appellant out of the door and closed it.
The appellant does not deny shooting the victim but contends he was acting in self-defense and that the gun went off during a struggle.
I
The appellant argues that the trial court erred in denying his motion for a judgment of acquittal at the close of the State’s case. He contends that the State did not present a prima facie case because it failed to prove that the victim’s gunshot wounds were a “serious physical injury” as that term in defined in § 13A-l-2(9). Specifically, he asserts that the State failed to present evidence that the gunshot wounds were “life-threatening.”
Section 13A-6-20, Code of Alabama 1975, provides in pertinent part:
“(a) A person commits the crime of assault in the first degree if:
“(1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument.” (Emphasis added.)
The definition of “serious physical injury” is found at § 13A-l-2(9), Code of Alabama 1975, which reads:
“Serious Physical 'Injury. Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily ■ organ.”
(Emphasis added.)
When reviewing the evidence in the light most favorable to the State, as we must do, Jackson v. State, 516 So.2d 726 (Ala.Crim.App.1985), we find that the State did present sufficient evidence that the gunshot wounds were a serious physical injury as that term is defined in § 13A-1-2(9).
Kelly testified that he was hospitalized a total of 21 days as a result of his injuries. According to his testimony, he was hospitalized initially for the treatment of gunshot wounds and then again in April for blood clots. He testified that a bullet remains lodged in his arm.
Dr. Lucy King, an orthopedic surgeon, testified that she treated Kelly. The appellant cites a portion of her testimony in support of his position that the gunshot wounds did not constitute a serious physical injury. The appellant quotes Dr. King's testimony where she stated that she decided not to remove the bullet from Kelly’s arm because there was no sign of nerve or blood vessel damage or of severe hemorrhaging. The appellant states that Dr. King also testified to treating Kelly’s broken leg. He contends that neither of these injuries could be considered life threatening. The appellant omits, however, an important portion of Dr. King’s testimony. Dr. King testified to the procedure that had to be used to treat Kelly. She stated that once he was stabilized she had to make “sure that he had no other significant life threatening injuries.” (R-17.) She indicated that he had an entrance wound in the “upper portion of his thigh and by X-ray you could see fragments of the bullet toward the bone.” (R-16.) The bullet had apparently fragmented after striking the bone. She also testified Kelly had suffered a fracture of the thighbone just above the knee. Kelly had to undergo surgery to stabilize the fractured bone. The surgery consisted of pulling three fractures together by a fixation device. Dr. King described this device as being approximately IV2" wide and slightly over one foot long. It was attached to Kelly’s thighbone and extends from just above his knee to just below his hip. Dr. King indicated that it took approximately 14 screws to hold this device in place. She testified that the fixation device has not been removed and may have to remain attached to Kelly’s thighbone permanently. Dr. King testified that Kelly was in the hospital for 11 days and that she she continued to treat him until August 21, 1990.
*131 Dr. Robert Pieroni also testified for the State. He treated the victim for blood clots. According to Dr. Pieroni, the blood clots developed from inactivity and they were life threatening. The appellant con-, tends that because the indictment charged him with assault in the first degree by means of a gun, he can be convicted only if the serious physical injuries were caused by the gun, not inactivity.
As he did with Dr. King’s testimony, the appellant focuses on only a portion of Dr. Pieroni’s testimony. Dr. Pieroni first saw Kelly on April 1, 1990, when he was admitted to the hospital. He remained in the hospital on this occasion for 10 days. At this time Kelly was having difficulty breathing. Kelly thought that he might have developed a blood clot in his lower extremities that had travelled to his lungs. Dr. Pieroni testified that when he evaluated Kelly, he found that he had blood clots in both lungs. Dr. Pieroni testified that in his opinion this condition was life threatening. Dr. Pieroni testified that the clot was a result of a combination of the wound and the resultant surgery and inactivity. He continued to treat Kelly once a month until September 1990.
The appellant appears to contend that the only means of proving a serious physical injury, as that term is defined in § 13A-1-2(9), is to demonstrate that the wounds were life threatening. Although there was testimony presented that would indicate that the gunshot wounds were life threatening, this is not the only definition of a serious physical injury encompassed in § 13A-l-2(9). As noted previously, § 13A-l-2(9) defines serious physical injury as “injury which creates a substantial risk of death or which causes serious or protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.”
There was certainly sufficient evidence presented that the victim suffered a “protracted impairment of health” as a result of the gunshot wounds. He was hospitalized on two separate occasions for a total of 21 days and he continued to receive treatment for several months afterwards. He continues to carry a bullet in his arm and a metal plate in his leg.
In Barton v. State, 494. So.2d 943 (Ala.Crim.App.1986), this court addressed whether the State presented sufficient evidence of first degree assaults on Velda Barton and Karl Taylor. Barton was hit in the head with a pistol, which resulted in her head being cut open and profuse bleeding. Taylor was beaten, had his head banged against a fireplace, and was hit in the eye with a butt of a gun. We determined that:
“[B]oth wounds required numerous stitches. The police believed their wounds to be serious enough to call an ambulance for Valda Barton and to take Taylor immediately to the emergency room after they found him. Both Valda Barton’s and Taylor’s wounds left scars.
“Valda Barton testified she was bedridden for one week after she received the injury to her head. She did not stay in the hospital because she could not afford it.
“Taylor testified he had trouble with his eyes after he received the injury to his eyebrow. He also had headaches for a while after he sustained his injury.
“These facts are sufficient evidence that both Valda Barton and Taylor received serious physical injuries as a result of the assault by this appellant.”
Barton, 494 So.2d at 947, 48. See also Thomas v. State, 418 So.2d 964 (Ala.Crim.App.1982). Certainly the testimony of the injuries suffered as a result of the gunshot in the instant case are as serious as those set out in Barton, supra.
Accordingly, we find that the trial court did not err in denying the appellant’s motion for a judgment of acquittal.
II
In issue two in the appellant’s initial brief he contends that the trial court erred in its jury charge on self-defense. He argues in issue three that the trial court erred in not charging the jury on impeachment. The State responded by asserting that these issues were not preserved for *132 appellate review because, it says, the record contains no indication that the appellant objected to the jury charge.
In his reply brief, the appellant concedes that his trial counsel made no objection to the court’s charge to the jury. In fact, he asserts that several other critical objections were not made. He states that this, along with other actions or inaction of his trial counsel, indicates he was denied the effective assistance of counsel. (The appellant was represented by one counsel at trial and by a different counsel for sentencing and on appeal.) He asks this court to reverse this judgment based upon ineffective assistance of counsel or to remand for a factual determination of ineffective assistance of counsel.
This issue cannot be considered at this time, because it was raised for the first time on appeal. Ex parte Jackson, 598 So.2d 895 (Ala.1992).
AFFIRMED.
All the Judges concur.