Bergan, J.
The revised Penal Law creates a new kind of offense, simpler in structure than an attempt or a conspiracy, and resting solely on communication without need for any resulting action (art. 100, Criminal Solicitation, part of tit. G, Anticipatory Offenses, L. 1965, ch. 1030). Attempts to commit crimes and conspiracies are continued with some changes as crimes and these, too, are grouped within title G as “Anticipatory Offenses” (art. 105, Conspiracies; art. 110, Attempts).
The basic statutory definition of criminal solicitation is that with intent that another person shall “ engage in conduct constituting a crime” the accused “solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct ”. This basic definitory language is continued through three grades of solicitation, the gravity depending on what crime the conduct sought to be induced would effectuate.
If the conduct would be “ a crime ” it is criminal solicitation in the third degree, a “violation” (§ 100.00); if the conduct would be “ a felony ” it is criminal solicitation in the second degree, a class A misdemeanor (§ 100.05); and if the conduct would be murder or kidnapping in the first degree it is criminal solicitation in the first degree, a class D felony (§ 100.10).
As it has been noted, nothing need be done under the statute in furtherance of the communication (“ solicits, commands, importunes ”) to constitute the offense. The communication itself with intent the other person engage in the unlawful conduct is enough. It needs no corroboration.
And an attempt at communication which fails to reach the other person may also constitute the offense for the concluding clause “ or otherwise attempts to cause such other person to engage in such conduct ” would seem literally to embrace as an attempt an undelivered letter or message initiated with the necessary intent.
Appellants have been convicted after a trial by a three-Judge panel in the Criminal Court of the City of New York of violation of section 100.05 which describes solicitation to commit a felony. The information on which the prosecution is based is made by complainant Max Silverman. It describes the charge as criminal solicitation and states that ‘[1] defendants attempted to cause *63 deponent to commit the crime of grand larceny” in that they “ attempted to induce the deponent to obtain precious stones on partial credit with a view towards appropriating the property to their own use and not paying the creditors, said conduct constituting the crime of larceny by false promise ”.
Although the Penal Law section number is not stated in the information, jit was clearly stated in court before the opening of the trial that the charge was a violation of section 100.05 and the facts alleged that the inducement was to commit grand larceny, a felony, which gave adequate notice of the nature of the offense involved.
The proof in support of the charge, if factually accepted by the trial court, as it was by a majority of the Judges (one dissenting), was sufficient to warrant conviction. The Appellate Term affirmed unanimously.
The evidence showed that complainant Silverman and both defendants were engaged in the jewelry business. It could he found that defendant Lubow owed Silverman $30,000 for diamonds on notes which were unpaid; that Lubow had told Silver-man he was associated with a big operator interested in buying diamonds and introduced him to defendant Gissinger.
It could also be found that in October, 1967, Silverman met the two defendants together at their office, demanded his money, and said that because of the amount owed him he was being forced into bankruptcy.
Silverman testified in response to this Lubow said “ Well, let’s make it a big one, a big bankruptcy ”, and Gissinger said this was a good idea. When Silverman asked “ how it is done ” he testified that Lubow, with Gissinger participating, outlined a method by which diamonds would be purchased partly on credit, sold for less than cost, with the proceeds pyramided to boost Silverman’s credit rating until very substantial amounts came in, when there was to be a bankruptcy with Silverman explaining that he had lost the cash gambling in Puerto Rico and Las Vegas. The cash would be divided among the three men. The gambling explanation for the disappearance of cash would be made to seem believable by producing credit cards for Puerto Rico and Las Vegas. Silverman testified that Lubow said “ we would eventually wind up with a quarter of a million dollars each ” and that Gissinger said “ maybe millions ”.
*64 Silverman reported this proposal to the District Attorney in October, 1967 and the following month a police detective equipped Silverman with a tape recorder concealed on his person which was in operation during conversations with defendants on November 16 and which tends to substantiate the charge. The reel was received in evidence on concession that it was taken from the machine Silverman wore November 16.
A police detective testified as an expert that a “bust out operation” is a “pyramiding of credit by rapid purchasing of merchandise, and the rapid selling of the same merchandise sometimes 10 and 20 per cent the cost of the merchandise itself, and they keep selling and buying until they establish such a credit rating that they are able to purchase a large order at the end of their operation, and at this time they go into bankruptcy or they just leave ’ ’.
There thus seems sufficient evidence in the record to find that defendants intended Silverman to engage in conduct constituting a felony by defrauding creditors of amounts making out grand larceny and that they importuned Silverman to engage in such conduct. Thus the proof meets the actual terms of the statute.
The statute itself is a valid exercise of legislative power. Commentators closely associated with the drafting of the Model Penal Code of the American Law Institute, from which the New York solicitation statute stems, have observed: “Purposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition towards criminal activity to call for liability. Moreover, the fortuity that the person solicited does not agree to commit or attempt to commit the incited crime plainly should not relieve the solicitor of liability, when otherwise he would he a conspirator or an accomplice.”[1]
Solicitation to commit a felony was a misdemeanor at common law (People v. Bush, 4 Hill 133, 135; Bex v. Higgins, 2 East 5). Summarizing this historical fact Judge Cardozo observed: “ So at common law, incitement to a felony, when it did not reach the stage of an attempt, was itself a separate crime, and like *65 conspiracy, which it resembled, was a misdemeanor, not a felony” (People v. Werblow, 241 N. Y. 55, 66, citing Higgins and Rex v. Gregory, L. R. 1 C. C. R. 77).
But as People v. Bush demonstrates, the solicitation in early New York cases was treated as closely related to an attempt. There defendant asked another to burn a barn and gave him a match for that purpose. This principle was followed to some extent (e.g., People v. Bloom, 149 App. Div. 295, 296-299) but there were fundamental difficulties with it under the concept of attempt and it seems not to have been followed after Bloom.
Although this Penal Law provision is the first statutory enactment in New York, there have been statutes aimed at criminal solicitation in some other States, notably California.
In commenting on the criminal solicitation enactment of article 100, two lawyers who were active in the work of the State Commission on Revision of the Penal Law and Criminal Code which prepared the present statute observed that article 100 ‘‘ closes that gap ’ ’ for those who believe, as apparently the commission and the American Law Institute did, that “ solicitation to commit a crime involves sufficient culpability to warrant criminal sanctions ”.[2]
There are, however, potential difficulties inherent in this penal provision which should be looked at, even though all of them are not decisive in this present case. One, of course, is the absence of any need for corroboration. The tape recording here tends to give some independent support to the testimony of Silverman, but there are types of criminal conduct which might be solicited where there would be a heavy thrust placed on the credibility of a single witness testifying to a conversation. Extraordinary care might be required in deciding when to prosecute; in determining the truth; and in appellate review of the factual decision.
One example would be the suggestion of one person to another that he commit a sexual offense; another is the suggestion that he commit perjury. The Model Penal Code did not require cor *66 roboration; but aside from the need for corroboration which is traditional in some sexual offenses, there are dangers in the misinterpretation of innuendos or remarks which could be taken as invitations to commit sexual offenses. These are discussed by Wechsler-Jones-Korn (61 Col. L. Rev., p. 623, supra) with the comment that “it is a risk implicit in the punishment of almost all inchoate crimes ”.
In two opinions for the California Supreme Court, Justice Traynor has analyzed that State’s criminal solicitations statute (Penal Code, § 653f; Benson v. Superior Ct. of Los Angeles County, 57 Cal. 2d 240 [1962], and People v. Burt, 45 Cal. 2d 311 [1955]).
The first case was for solicitation to commit perjury and the second for solicitation to commit extortion.
The California statute is based on a specific list of serious crimes to which criminal solicitation expressly applies; but as to all of them the statute requires that the offense ‘ ‘ must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances ”.
The basic public justification for legislative enactment is, however, very similar to New "York’s and was developed in the Burt opinion: “Legislative concern with the proscribed soliciting is demonstrated not only by the gravity of the crimes specified but by the fact that the crime, unlike conspiracy, does not require the commission of any overt act. It is complete when the solicitation is made, and it is immaterial that the object of the solicitation is never consummated, or that no steps are taken toward its consummation. ’ ’ The California Legislature was concerned ‘ ‘ not only with the prevention of the harm that would result should the inducements prove successful, but with protecting inhabitants of this state from being exposed to inducements to commit or join in the commission of the crimes specified ” (45 Cal. 2d 311, supra, p. 314).
Another potential problem with the statute is that it includes an attempt to commit unlawful solicitation, i.e., solicits, etc., “ or otherwise attempts to cause ” the conduct. This has the same effect as the Model Penal Code, but the language there is different. The code spells the purpose out more specifically that: “It is immaterial * * * that the actor fails to communicate with the person he solicits to commit a crime if his conduct *67 was designed to effect such communication ” (Model Penal Code, § 5.02, subd. [2], Tent. Draft No. 10, as analyzed by WechslerJones-Korn, op. cit., p. 621). This could be an attempt in the classic sense and might be committed by a telephone message initiated but never delivered. The present Penal Law, stated in different language, has the same effect.
Appellants raise a point based on the reduplicative overplay of section 100.00 which is a “ violation ’ ’ and section 100.05, of which they have been convicted, a “ class A misdemeanor ”.
Literally, the same act could fall within either section; and specifically the acts charged to appellants could come within either.
Section 100.00 relates to solicitation of another person to “engage in conduct constituting a crime ” and section 100.05 to “ engage in conduct constituting a felony ”.
Since a felony is a crime, whenever a charge is made based on solicitation to commit felony, it would come within both sections. It is not entirely clear why the statute was drawn this way. The commentators Denzer and McQuillan observe that although section 100.00 “embraces solicitation to commit any crime from a class B misdemeanor up to a class A felony, its principal application would normally be to those solicitation offenses not covered by the higher degrees ” (op. cit., pp. 169-170).
Whatever may be said of the abstract merits of a choice of prosecution based on the same act between a higher or lesser degree of crime, it seems to have been decided that prosecution for the higher degree is permissible (People v. Bord, 243 N. Y. 595; see, also, People v. Bergerson, 17 N Y 2d 398, 401; People v. Hines, 284 N. Y. 93, 105).
It is argued that the information failed to advise defendants whether they were charged under section 100.00 or section 100.05 and that, since the grand larceny charged to have been solicited could come within 100.00, the information actually charged a violation; hence the three-Judge panel was without jurisdiction under section 40 of the New York City Criminal Court Act which provides for such a panel for trial of misdemeanors.
But the record shows no request by defendants for particularization; before the opening of the trial it was announced that *68 the charge was based on section 100.05 and no objection or motion for specification was made as to the section on which the prosecution was proceeding (People v. Bogdanoff, 254 N. Y. 16, 31; People v. Farson, 244 N. Y. 413; People v. Williams, 243 N. Y. 162, 165).
Moreover, defendants requested and had a preliminary hearing which is permissible under section 40 for misdemeanor cases where a three-Judge panel will try the case; and they proceeded to trial before the three-Judge panel without objection addressed to the part or the number of Judges participating.
The parts of the court and panels of Judges are all within the Criminal Court which has statutory jurisdiction (“ The court and the judges thereof”) of misdemeanors as well as offenses less than misdemeanor (§ 31). The information sufficiently charged a misdemeanor. The Criminal Court constituted by three Judges had jurisdiction.
Appellant Lubow argues that the tape recording of the conversations offered by the People was garbled and unintelligible and that the use of a transcript of it by the court, as it was being played, was improper. But there was no complaint by him at the trial that the tape was inaudible or unintelligible. It was sufficiently audible in large part, however, that the court stenographer, who had not heard it before, was able to transcribe most of it.
It was understandable enough to leave it for the decision of the Trial Judges as to whether it would be received (Monroe v. United States, 234 F. 2d 49, 55). There was an express consent by counsel to allow the Judges to take the transcript as an aid without receiving the transcript into evidence, and it'was offered for this limited purpose (People v. Feld, 305 N. Y. 322, 331-332).
Lubow also argues that there was no proper allocation of the respective persons speaking. But as to the tape itself, which was played for the court while the transcript was being used as an aid, counsel for Lubow at the trial agreed with the summary of the court that his objection to the recording was “ not on the ground of continuity, not on the ground of identification, but on the ground * * * it interfered with his constitutional rights, and that it is cumulative ”,
*69 The judgment should be affirmed.
Chief Judge Fuld and Judges Scileppi, Breitel, Jasen and Gibson concur with Judge Bergan ; Judge Burke concurs in result only.
Judgment affirmed.

. Herbert Wechsler, Chief Reporter, Model Penal Code; William Kenneth Jones, Special Consultant, Model Penal Code, and Harold L. Korn, Special Consultant, Model Penal Code, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy, 61 Col. L. Rev. 571, 622.

. Richard G. Denzer, Executive Director of the Commission on Revision of the Penal Law and Criminal Code, and Peter McQuillan, Counsel to the Commission, Practice Commentary to Penal Law, art. 100, McKinney’s Cons. Laws of N". Y., Book 39, Penal Law, p. 169.