The indictment charged Leslie James, alias, with the first degree burglary of the dwelling house of Melody Putman, who was lodged therein on the night of June 12-13, 1979. The jury found the appellant "guilty as charged" in the indictment, and the trial court set sentence at twenty years imprisonment in the penitentiary.
Leonard M. Robbins, a Birmingham evidence technician officer, stated that he went to Apartment B-2 at 2310 Highland Avenue in Birmingham, Alabama, on the early morning of June 13, 1979. He made four fingerprint lifts from an aluminum screen on a bedroom window, two from the outside and two from the inside. He made three fingerprint lifts from the window frame. These lifts were delivered by Robbins to Ms. Sandra Triplett, a senior fingerprint technician at the Identification Bureau of the City of Birmingham.
On cross-examination Sergeant Robbins stated that he arrived at the residence about 8:33 in the morning and made fingerprint lifts. He stated that a window and screen in the bedroom were partly open.
Ms. Melody Putman stated she was employed in the Special Studies Section of the University of Alabama, at Birmingham, and resided in Apartment B-2 at 2310 Highland Avenue on June 12-13, 1979. She stated that her apartment was on the ground floor and she had burglar bars on one bedroom window, but the other window led to a courtyard and did not have burglar bars. Ms. Putman indicated that she retired around 10:30 on the evening of June 12, 1979, at her apartment, and was awakened about 2:30 the next morning by a noise at her window. She stated that the window and screen were closed when she retired. She said she heard a crunching sound of some leaves just outside her window and called out, "Who's out there, go away from here." Suddenly a black male stuck his head inside the window and she exclaimed to him, "Get out." He climbed inside and seized her. She stated that she kicked her assailant in the groin area and managed to free herself. She ran from the bedroom into the living room area. The black male pursued her, grasped at her a second time, but she had managed to open the door into the front stairwell. She stated that she scratched and struck the male in the face, then screamed and managed to fall outside the door at the bottom of the stairwell. Ms. Putman testified that she recalled that a Birmingham police officer, Gary Childs, lived upstairs. She screamed and ran up the stairs toward his apartment. As she pounded on Childs' door, the door suddenly opened, Childs pushed her inside his apartment and began to pursue the black male.
Ms. Putman described her assailant as being a young, slender black male in his early twenties with short hair, a little nappy beard, and wearing a short sleeved tan sweater or shirt. She stated that her assailant was slightly taller than herself, and that she was five feet, five inches tall. Ms. Putman identified photographs of the bedroom window through which her assailant had appeared.
Ms. Putman indicated that she had not given anyone permission to enter her apartment at night. She stated that the incident occurred between 2:30 and 2:45 on the early morning of June 13, 1979.
On cross-examination Ms. Putman indicated that the bedroom window led into a courtyard outside her apartment near an alleyway. She stated there was a large street light on Highland Avenue which shone down the alleyway. Ms. Putman indicated that she could not positively identify her assailant.
Birmingham City Policeman Gary R. Childs testified he lived at Apartment B-8, a second floor apartment at 2310 Highland Avenue in Birmingham. He stated that he had a neighbor, Ms. Melody Putman, who lived in an apartment on the first floor. He stated that he had just gotten off duty and had come to his apartment shortly after 2:00 on the morning of June 13, 1979. *Page 674 
Officer Childs stated he had just hung his gun belt and .38 Smith and Wesson revolver on a coatrack just inside the door, and had lain across the bed, partly dressed, when he heard some screams and his name being called. He stated he looked down the stairs and saw Ms. Putman fall out into the floor at the base of the stairs from her living room door. She screamed and called to him. Childs stated he reached inside his door for his revolver, and at that time Ms. Putman was coming up the stairs and at his door. He stated he pushed her inside his apartment door and yelled to the black male, who was then pursuing her, to halt. He stated the black male ran back down the stairs and he pursued him through the doorway and out into the courtyard. He stated that he fired once, but the screen door struck his hand, causing him to miss the assailant. Childs chased him to the courtyard, then to the driveway between the apartments and yelled to him to halt a second and third time. When he did not, the assailant crossed under the street light at the bottom of the driveway and he fired at him twice with his revolver. He heard the assailant yell and then saw him fall.
Childs stated that he went to the area where he had seen the assailant fall, but did not find him. He then returned to his apartment and telephoned Police Headquarters for assistance. He then gave a description on his walkie-talkie radio, stating the assailant was a young black male about five feet, eight inches tall, weighing 140 pounds, medium build, short hair, and wearing a beige and tan shirt or sweater and dark trousers. Childs stated that Ms. Putman remained at his apartment until some officers arrived to investigate. The following morning they went to Ms. Putman's apartment and found a brownish colored plastic button with two holes. He said it was elliptical in shape and was found on the living room floor. Officer Childs placed the button in an envelope and identified same as State's Exhibit 11 at trial.
That same morning, about 7:45, Officer Childs indicated that some paramedics from the Fire Department and several officers from the South Precinct of the Birmingham Police Department came by and told him they had found a suspect on the porch of a house a few doors away. Officer Childs then walked over, about seventy-five yards away, where he observed the appellant, Leslie James, seated on the porch. He was being administered to by the paramedics who were present. Childs stated that the paramedics were administering to a gunshot wound. He stated that the appellant was wearing a beige or tan shirt or sweater and dark trousers. The shirt worn by appellant was taken by the officers and marked for identification. It was introduced at trial as Exhibit 8. The shirt had two buttons, and a third was missing, but the buttons were of the same smoky gray or tan color and elliptical in shape, with two holes, as was the button found on the floor of Ms. Putman's apartment.
On cross-examination Officer Childs stated that the apartment where the appellant was found by the officers was about seventy-five yards down Highland Avenue from his own, and it was the residence of Mr. and Mrs. George Coffman. Officer Childs stated that he had just retired, having gotten off duty, when he heard the screams of his neighbor, Ms. Putman, underneath his apartment. He opened his door and looked down the stairway in time to see Ms. Putman fall from her front door. A black male was behind her trying to grab her. It was at this point that he reached inside his apartment for his service revolver. Officer Childs stated that he wore contact lenses, but did not have them in place when the incident occurred. He stated that John Caroll High School was just across the street from the apartment building where he resided. He indicated that he saw blood on the person of the appellant and on the porch at 2485 Highland Avenue, the Coffmans' apartment. Officer Childs stated that he talked with Mr. Coffman, together with other officers that morning, and that he did state to the officers, "This is the man I shot last night." Officer Childs stated that it all happened very fast, and that he only saw the appellant for just a few seconds and did not have his contact lenses on. *Page 675 
On redirect-examination, Officer Childs stated that the blood he observed on the person of the appellant was between his neck and mid torso on the front side.
Birmingham Police Patrolman Jack T. Brand stated that he worked in the fingerprint department of the Birmingham City Jail. He identified as Exhibit 12 a set of fingerprints which he made of the appellant on June 13, 1979.
Ms. Sandra Triplett testified that she was a senior fingerprint technician with the Bureau of Identification of the Birmingham Police Department on June 13, 1979. She stated that after her formal education she had worked with the F.B.I. in Washington before returning to Birmingham as a fingerprint expert. Ms. Triplett stated that she examined State's Exhibits 1-7, which were some latent print lifts delivered to her on June 14, 1979. She stated they were made from an apartment window at 2310 Highland Avenue, Birmingham, and that she compared these with State's Exhibit 12, which had been identified to her as the prints of the appellant. She stated that State's Exhibits 1 and 2 were negative when compared to Exhibit 12, and that Exhibit 3 did not provide enough data for comparison.
Ms. Triplett stated that as to State's Exhibit 4, she found 30 points for comparison and identified this print as being the No. 2 finger, or right index finger, of the appellant. State's Exhibit 5 contained two fingerprints of the appellant, which she identified as the 7th and 8th fingers of State's Exhibit 12, and that finger No. 7 of Exhibit 12 had 18 points of identification. Finger No. 8, which is the left middle finger, had 14 points of identification.
Ms. Triplett stated that State's Exhibit 7 did not match any of the prints on State's Exhibit 12. She then indicated that she was able to obtain three positive fingerprint identifications which contain sufficient points for her to determine that the prints brought to her from the apartment window matched the prints of the appellant, which were Exhibit 12.
Mr. George Coffman stated that he lived at 2485 Eleventh Avenue South, Apartment 1, in Birmingham, with his wife, on June 12-13, 1979. He stated that on the early morning of June 13, his wife noticed their cat making a noise because of some disturbance on the front porch. She looked through the window and saw a man lying on the porch. Mr. Coffman then looked out and saw a black male, dressed in a brown and tan "T" shirt and blue jeans. The "T" shirt had blood on it. He stated that he asked the man if he could assist him, and the appellant replied, "Call a doctor." He immediately telephoned the University of Alabama Medical Center and told them that a victim of a gunshot wound was lying on his front porch. Mr. Coffman stated that his apartment was just off Highland Avenue, about seventy-five yards from the apartment building where Ms. Putman and Officer Childs resided. He stated that he noticed blood on the person and shirt of the appellant, and that State's Exhibit 8, the appellant's shirt, appeared to be the same one which he saw on the appellant the morning of June 13, 1979, at about 7:00 a.m.
On cross-examination Mr. Coffman stated that Officer Childs came over with other officers that morning. He said that Officer Childs stated the man looked like the one he shot the night before after he broke into the apartment house where he resided.
The appellant did not take the stand and testify, nor did he present any evidence in his behalf at trial.
There were no objections to the closing argument of the attorneys, nor were there any exceptions reserved to the oral charge of the court.
The trial court gave seven written charges, which were requested by appellant's counsel.
 I
The appellant questioned the fingerprint identifications made by Birmingham Senior Evidence Technician Sandra Triplett. *Page 676 
Ms. Triplett testified that she received the latent prints of the appellant the day after the break-in and determined that 3 of the fingerprints from the group of 7 brought to her from the apartment window screen and window frame matched the latent prints of the appellant. Ms. Triplett indicated that she was able to obtain 30 points of identification on 1 print and 18 points and 14 points of identification on 2 others. This testimony was properly admitted by the trial court for consideration by the jury, together with all other circumstances on the question of the appellant's guilt. Littlev. State, Ala.Cr.App., 357 So.2d 379 (1978) Cummings v. State, Ala.Cr.App., 356 So.2d 779 (1978); and Seruggs v. State, Ala.Cr.App., 359 So.2d 836, cert. denied, Ala., 359 So.2d 843
(1978).
We have carefully examined this record and have determined from all the circumstances established by the evidence that the State of Alabama properly presented a prima facie case of first degree burglary. Whitson v. State, Ala.Cr.App., 377 So.2d 1108, cert. denied, Ala., 377 So.2d 1111 (1979).
This record is free of error and the judgment is therefore
AFFIRMED.
All the Judges concur.