Appellant Jackie Sue Nichols was convicted of murder in the shooting death of a pharmacist. She was sentenced to life imprisonment.
Three issues are raised on appeal.
 I
Appellant first contends that the evidence presented by the State was insufficient to support the verdict. We cannot agree. The facts as they were presented by the State's case in chief showed that on July 14, 1980, at 6:51 p.m., an alarm went off on the Gardendale Police Department's alarm board indicating that an alarm switch had been pulled at J J Drugs, a local pharmacy.
A patrol car was sent to the scene, and arrived at 6:59 p.m. Officers found that both the front and the back doors to the pharmacy were locked. Eventually they pried the back door open, and found the victim, Joe Paige, dead from gunshot wounds, lying face down in a walkway behind the store's counter. The under-the-counter silent alarm that was used to signal the police department had been pulled loose from the counter. A number of "bait drugs" were missing from underneath the counter.
State witness Gloria Conn testified that she worked for a real estate company called Chambers Realty, located near J J Drugs. She said she went to her office on the night of July 14, 1980, sometime between 6:45 p.m. and 6:55 p.m. At that time *Page 994 
she saw a vehicle coming out of the gravel alley that led behind the drug store and Chambers Realty. She described the vehicle as medium in size, and dark colored. Ms. Conn said the car was travelling faster than it should have been, and she was afraid it might hit a parked car. The witness stated that the speeding car came very close to her, and she could see two people, one of whom she identified as the appellant, Jackie Sue Nichols, and another individual who was eventually identified as Phillip Sapp. Ms. Conn said that Nichols had "a grin, a smirk" on her face, and was wearing light-colored clothing.
Other State's evidence linking Nichols to the crime showed that a fingerprint of appellant was lifted from the inside face of the rear door of the pharmacy. In addition, Nichols's palm print was also found on the back door.
Evidence given by the victim's business partner, Steve Hill, indicates that no customer in the drug store ever had access to the rear door, which was used only by employees of the store and for deliveries of merchandise. The witness said he knew the appellant and had never seen her inside the drug store except years previous when the store had been at a different location.
It is our duty to view the evidence in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871
(Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). The State's case clearly shows that appellant's prints were found in an area of the store to which she should not have had access. Fingerprints are strong physical evidence, and they frequently form the basis used to identify those present at the scene of a crime. See Gratton v. State, 455 So.2d 189
(Ala.Crim.App. 1984); James v. State, 381 So.2d 672
(Ala.Crim.App. 1980); Cox v. State, 373 So.2d 342
(Ala.Crim.App. 1979), 30 Am.Jur.2d, Evidence, § 1144 (1977).
Although it is recognized that fingerprint and palm print evidence is circumstantial or opinion in nature, the basic reason for the universal recognition of its admissibility to establish identity is its great reliability. 1 Wharton'sCriminal Evidence, § 192 (C. Torcia 13th ed. 1972). It is the strongest kind of evidence. Stoppellie v. United States,183 F.2d 391, 394 (9th Cir. 1950), cert. denied, 340 U.S. 864,71 S.Ct. 88, 95 L.Ed. 631 (1950), reh. denied, 340 U.S. 898,71 S.Ct. 237, 95 L.Ed. 651 (1950).
The weight to be given evidence of the correspondence of fingerprints and palm prints, where offered to prove the identity of the accused as the person committing a crime, is for the determination of the jury in the light of all the surrounding facts and circumstances. James v. State,381 So.2d 672 (Ala.Crim.App. 1980).
The rear door faced an alley which was not ordinarily traversed by the public, and the door where the finger print and palm print were found was not accessible to the general public. The appellant was seen in an automobile coming from the alley behind the pharmacy at an excessive rate of speed around the time of the shooting. There was no evidence presenting any other reasonable explanation as to how appellant's fingerprint and palm print came to be on the door. The jury was authorized to conclude that the fingerprint and palm print were those of appellant and that they were impressed on the door at the time of the commission of the crime.
Reviewing sufficiency of the evidence under the tests we must apply, we conclude that the jury in this case might have reasonably found that the evidence excluded every reasonable hypothesis except that of guilt. Cumbo, supra. We find the evidence sufficient as a matter of law to support the verdict.
Thus, we conclude appellant's first issue is without merit.
 II
The next issue raised by appellant is whether the trial court committed reversible error when it allowed evidence to be presented concerning the fact that appellant and two others, including Phillip Sapp, *Page 995 
were being watched by Officer Jimmy Wesson of the Birmingham Police Department, who was accompanied by agents of the F.B.I. Specifically, appellant claims that such evidence pointed to other crimes, and thus was inadmissible.
We cannot agree. The trial court sustained appellant's objection to the word "surveillance" being used to describe the activities of Officer Wesson and his associates. Wesson's testimony about his observation of Jackie Sue Nichols was relevant for several purposes. First, it helped corroborate the testimony of Ms. Conn by placing appellant in the company of Phillip Sapp on the day of the crime. In addition, the pictures taken of appellant by Wesson that day showed she was wearing light-colored clothing, a fact noted by Ms. Conn when she saw the suspect's car leaving the alley behind the drug store the night of the crime. Lastly, the testimony of Officer Wesson showed that Jackie Sue Nichols was in the company of Walter Griffith on the day of the crime.
At trial, Griffith testified that he rented a dark-colored car for Jackie Sue Nichols on that same day. We must conclude that any prejudice that might have arisen from testimony that appellant was being observed by police on the day of the crime was far outweighed by the probative value of that testimony.
 III
Appellant's last issue on appeal is whether or not the trial court committed reversible error when it admitted evidence concerning a lineup held in which Ms. Conn identified Phillip Sapp as one of the occupants in the car she saw leaving the vicinity of the drug store on the night of the murder. Nichols argues that the evidence was "highly prejudicial". Once again, we find appellant's argument is without merit. Since Ms. Conn's credibility had been attacked, her swift, positive identification of Phillip Sapp was highly relevant.
Appellant also argues that testimony of Officer Lynn Moore about what Ms. Conn said at the time of the lineup was inadmissible hearsay. However, we must agree with the State that the hearsay rule is not applicable in a situation such as this where the challenged testimony concerns an out-of-court identification made by a witness who was present at trial and subject to defense's cross-examination. See Williams v. State,389 So.2d 151 (Ala.Crim.App.), cert. denied, 389 So.2d 154
(Ala. 1980).
After careful consideration of those issues raised by appellant, we must conclude that the judgment of the lower court is due to be affirmed.
AFFIRMED.
All the Judges concur.