THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
SAMUEL GRAINGER, Appellant.

Fourth Department, February 21, 1986

APPEARANCES OF COUNSEL

*Gerald T. Barth (Sean Denvir* of counsel), for appellant.

*Richard A. Hennessy, District Attorney (Beth Van Doren* of counsel), for respondent.

**OPINION OF THE COURT**

DILLON, P. J.

 The jury convicted defendant of robbery in the first degree (Penal Law § 160.15 [1]). On appeal, he contends: (1) that the police and prosecutor violated his right to counsel when, through their agent, he was questioned about the subject matter of the robbery on which he was then represented by counsel, and that evidence thereby obtained should have been suppressed; (2) that the trial court erred in permitting the People, over objection, to introduce rebuttal testimony of his previously suppressed admissions to a police officer; and (3) that the trial court erred in failing to instruct the jury that such rebuttal testimony could be considered only on the issue of defendant's credibility. Since each of defendant's arguments has merit, there must be a reversal and a new trial.

On February 12, 1982, a robbery of a small grocery store in

the City of Syracuse was committed by two men. During its commission, the elderly cashier was knocked to the floor and suffered a broken hip and shoulder. On the next day, Michael Hunt admitted to the police that he was a participant in the robbery and that defendant was his accomplice. On February 15, 1982, defendant was arrested and during the course of interrogation by Police Detective Miller, he made admissions concerning his participation in the robbery.

In early August 1982 Dorothy Beebe, who knew defendant to be an intimate friend of her daughter, reported to the police and the Assistant District Attorney in charge of the prosecution of defendant that she was being harassed by the defendant on the telephone. She asked the prosecutor to record her telephone calls because she wanted to "get something on the phone so he'd leave me alone." The tape recorder was installed but neither the police nor the prosecutor gave any instructions to Mrs. Beebe as to how to conduct any conversations she might have with defendant. Thereafter, tapes of recorded conversations were reviewed by the police and new tapes were installed as needed. The police officer in charge of that operation erased all of the taped conversations except one between defendant and Mrs. Beebe which occurred in the latter part of August and which he deemed to be "pertinent". During that recorded conversation, Mrs. Beebe repeatedly and with persistence interrogated defendant on the subject matter of the robbery. She accused him of having "hurt that old lady * * * 78 years old, paralyzed her * * * for the rest of her life." She repeatedly stated that he had committed a crime and that he should "not even be running loose". Several times during the conversation, defendant denied any participation in the crime but finally defendant stated: "Hey, I was gonna send the lady flowers in the nursing home cause I didn't hit that lady * * * I didn't attack her * * * she got pushed * * * accident". Mrs. Beebe stated: "You pushed her * * * you told me you pushed her down", and defendant responded: "Yes * * * in a panic * * * I was scared * * * you know * * * and I pushed her".

Defendant moved to suppress his statement made to Detective Miller in February 1982 and the recorded statements made to Mrs. Beebe in August 1982. The suppression court granted the motion to suppress the admissions made to Detective Miller on the ground that the police were aware of a pending unrelated charge in Syracuse City Court on which defendant was then represented by counsel. The court denied

suppression of the statements made during the recorded conversation with Mrs. Beebe on the grounds that: Mrs. Beebe was not acting at that time as an agent of the police; defendant initiated the phone call; and his statements were voluntary and spontaneous.

At trial, Mrs. Beebe testified concerning the admissions made to her, and the tape recorded conversation was received in evidence. Defendant took the stand and stated that although he was present at the scene during the commission of the crime, he was unaware that Michael Hunt intended to rob the store; that he was under the influence of drugs at the time and had little recollection of what had occurred during the robbery. He was not cross-examined as to his previously suppressed admissions to Detective Miller. On rebuttal, Miller testified, over objection, as to the inculpatory statements made by defendant in February 1982. No request was made by defendant for limiting instructions concerning Miller's rebuttal testimony; no limiting instructions were given to the jury and no exception was taken to the charge.

I

One who is represented by counsel can only waive his right to counsel in the presence of counsel *(People v Hobson,* 39 NY2d 479, 483). Absent such a waiver, the police may not question a defendant *(People v Arthur,* 22 NY2d 325). Once the right to counsel has attached, the prosecutor and the police "have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection" it affords *(Maine v Moulton,* — US —, 106 S Ct 477, 479). That obligation pertains whether applied to direct communication between the suspect and the police, or to communication between the suspect and one acting as an agent of the police *(see, Massiah v United States,* 377 US 201; *People v Cardona,* 41 NY2d 333).

The right to counsel, however, will not serve to immunize one represented by an attorney against investigative techniques employed to uncover other ongoing crime *(People v Ferrara,* 54 NY2d 498, 508). Thus, it has been held that during investigation by the police of a new crime in progress, a suspect whose right to counsel has attached with respect to a past crime may be subjected to questioning by a police agent in the absence of counsel *"so long as the questioning is legitimately related to the new crime"* *(People v Mealer,* 57

NY2d 214, 217, *cert denied* 460 US 1024; emphasis supplied). Of course, if during such interrogation, a represented defendant spontaneously volunteers inculpatory evidence concerning the past crime, such evidence may be received to prove his guilt of that crime *(People v Hobson,* 39 NY2d 479, 483, *supra).* Volunteered statements are not admissible, however, unless the accused "spoke with genuine spontaneity 'and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" *(People v Rivers,* 56 NY2d 476, 479, quoting *People v Maerling,* 46 NY2d 289, 302-303).

■ The People contend that Mrs. Beebe was not acting as an agent of the State when her conversation with the defendant was had and recorded, and that, in any event, defendant's admissions were spontaneous. We reject both claims. Mrs. Beebe was at least an agent of the police with respect to investigation of her harassment complaint. Beyond that, however, the police and prosecutor were fully aware that defendant was represented by counsel on this serious robbery charge and that the sole purpose of the surveillance was to record defendant's calls and conversations. Despite the obvious potential for circumvention of defendant's right to assistance of counsel, neither the police nor the prosecutor gave instructions to Mrs. Beebe as to the limited nature of the agency relationship and her obligation to refrain from affirmative inquiry on the subject of the robbery. As a consequence of that failure, Mrs. Beebe embarked upon an unrelenting inquisition designed solely and pointedly to procure admissions from defendant with respect to his participation in the robbery. She succeeded in her purpose, but it is beyond doubt that defendant's admissions were not made in response to inquiry legitimately related to the harassment investigation. It cannot be said in such circumstances that the prosecutor and police complied with their affirmative obligation not to circumvent and dilute defendant's 6th Amendment protection. It is equally obvious that defendant's admissions were not spontaneously volunteered. They were induced, provoked and encouraged by one acting as an agent of the State. Evidence procured in that manner should have been suppressed.

## II

■ We next address the admissibility of Detective Miller's rebuttal testimony which was received over objection. Ini-

tially, it is noted that defendant's admissions to Detective Miller were properly suppressed because the police knew of a pending charge against defendant and, upon inquiry, would have learned that he was represented by counsel on that charge *(see, People v Bartolomeo,* 53 NY2d 225).

It is well settled that statements obtained in violation of defendant's right to counsel, although not admissible as evidence-in-chief, may be used for impeachment purposes should defendant choose to testify *(Oregon v Hass,* 420 US 714; *Harris v New York,* 401 US 222; *People v Maerling,* 64 NY2d 134; *People v Ricco,* 56 NY2d 320). They are admissible as prior inconsistent statements and, as such, they may be the subject of both cross-examination of the defendant and rebuttal testimony *(People v Washington,* 51 NY2d 214). "To set the stage for the prior inconsistency, the questioner must first inform the witness of the circumstances surrounding the making of the statement, and inquire of him whether he in fact made it". *(People v Wise,* 46 NY2d 321, 326.) Their use always requires a proper foundation so that defendant may be given an opportunity to correct his testimony or explain the apparent inconsistency (Richardson, Evidence § 502 [Prince 10th ed]; *see, People v Washington, supra,* p 221; *People v Wise, supra).* It follows that unless the defendant is first given such an opportunity, the People may not offer proof of the prior statement on rebuttal *(People v Weldon,* 111 NY 569). This is so because of the obvious danger that the prior statement will impermissibly be viewed as an admission *(People v Gold,* 57 AD2d 575).

Here, defendant was denied any opportunity to explain the inconsistencies between his trial testimony and his former statements. On cross-examination of defendant, the prosecutor made no inquiry as to the prior statements and thus, no inconsistency was established. Contrary to the People's argument, no inconsistency can be gleaned from defendant's direct testimony. It follows that Detective Miller's testimony as to defendant's prior statements was not offered to question defendant's credibility at trial, but was impermissibly offered as an admission. That conclusion is bolstered by the omission in the court's charge, next reviewed.

## III

The trial court erred in failing to instruct the jury as to the limited purpose for which it could consider Detective Miller's

rebuttal testimony. While we acknowledge that the specific issue is not preserved for review *(see,* CPL 470.05; *People v De Mauro,* 48 NY2d 892), it is appropriate, in the circumstances of this case, to exercise our discretionary power *(see,* CPL 470.15).

Obviously, when defendant testified on his own behalf, his credibility was placed in issue. It is enough to note here that the discrepancies between his testimony at trial and his prior inconsistent and previously suppressed statements were significant on the issues of whether he knew of his accomplice's criminal intent prior to entering the grocery store and whether, during the robbery, he personally took money from the store. The failure to have charged the jury that the rebuttal testimony could only be considered on the issue of defendant's credibility worked to compound the error committed in permitting the testimony in the first instance. Since the jurors were unaware of the proper rule of law to apply to the rebuttal testimony, they were left free to consider the proof as evidence-in-chief of admissions by the defendant. The prosecution thus achieved an advantage specifically proscribed by the suppression order.

Finally, we conclude that the various errors heretofore reviewed prejudiced defendant to such an extent that he was denied a fair trial, and harmless error analysis *(see, People v Crimmins,* 36 NY2d 230) would be inappropriate. Since there must be a new trial, there is no need to address defendant's claim that the sentence imposed upon him was illegal, as well as harsh and excessive.

Accordingly, the judgment convicting defendant of robbery in the first degree must be reversed and a new trial granted.

DOERR, GREEN, O'DONNELL and PINE, JJ., concur.

Judgment unanimously reversed, on the law and as a matter of discretion in the interest of justice, and a new trial granted.