Larry Steven Kimbrough, alias Dusty Kimbrough, was indicted and subsequently convicted, after a jury trial, for criminal solicitation of murder, in violation of § 13A-4-1, Code of Alabama 1975, and was sentenced to 20 years' imprisonment. He appeals, raising three issues.
The indictment reads, in pertinent part, as follows:
 "LARRY STEVEN KIMBROUGH, ALIAS DUSTY KIMBROUGH . . . did solicit, request, command, or importune John David Strong to engage in conduct constituting the crime of murder (Section 13A-6-2 of the Alabama Criminal Code) to intentionally cause the death of another person, Charles O. Land, by shooting him with a pistol, with intent that such person engage in such conduct in violation of Section 13A-4-1 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama."
The record reveals that appellant and Charles O. Land, along with a financial backer, were the owners of Motion Dynamics, a design engineering firm located in Birmingham. Land received a telephone call from a man who identified himself as Bob Johnson, but who was later determined to actually be John David Strong, who lived in Montgomery and worked as a groundskeeper at Lancaster Architecture. Strong told Land that he had an invention he was developing and that he would like to discuss the invention with him. Land was unable to discuss it at that time, but he gave Strong his home telephone number so that he could contact him the next time he was in Birmingham. A few days later, Strong, still posing as Bob Johnson, called Land at his home and made arrangements to meet Land to discuss his invention. Land drove to an ice cream parlor located in Five Points, where he met Strong. At Strong's request, the two went, in Land's automobile, to a residence in Homewood, where Strong picked up a paper sack. They then proceeded to Leeds, where Strong had said the information about his invention was located. After passing through Leeds, Land noticed Strong reaching toward the ignition switch of the car and also observed a pistol in Strong's hand. Land grabbed the pistol and a struggle ensued. The two men fell out of the car, and Land began running down the road while trying to flag a passing car. Strong fired two shots, neither of which struck Land, and then got into Land's car and drove off in the direction of Leeds. Land was picked up by a passing motorist and taken to the Leeds police station, where he reported the incident. Strong, still driving Land's car, was arrested by Leeds police officers a short time later. The officers found women's clothes, a bottle of whiskey, pills, and a pair of handcuffs in a paper sack in the car. Subsequently, the police obtained information that led them to suspect that the appellant had hired Strong to murder Land, presumably to collect the $1 million proceeds from the "key man" life insurance policy that appellant and Land had obtained to insure the continuation of their business.
Appellant contends that the trial court committed reversible error in overruling his motion for judgment of acquittal, made at the conclusion of the state's case-in-chief, on the ground that the evidence required to corroborate the testimony of the solicitee, John David Strong, was legally insufficient to corroborate both the solicitation itself and the appellant's intent, as required by § 13A-4-1(a), Code of Alabama 1975. We disagree.
Section 13A-4-1(a) provides the following:
 "A person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a crime, he solicits, requests, commands or importunes such other person to engage in such conduct.
 "A person may not be convicted of criminal solicitation upon the uncorroborated testimony of the person allegedly solicited, and there must be proof of circumstances corroborating both the solicitation and the defendant's intent."
We find the following in the Commentary to § 13A-4-1: *Page 179 
 "In solicitation, the act evidencing the intent is the endeavoring, urging, advising, inciting, commanding, etc., another person to commit a crime. . . .
". . . .
". . . .
 "[I]f the solicitation is successful, the solicitor is criminally liable for the substantive crime solicited as an accomplice. If the solicitation does not result in commission of the crime, but the person solicited agrees, the solicitor and the solicitee are liable for conspiracy.
". . . .
 "In Alabama, until 1967, there was doubt as to whether the crime of solicitation even existed, as there was no statute nor case law on the subject, although the concept of advising, inciting, etc., was an element of a few other crimes, e.g., bribery, subornation of perjury, inciting to riot, overthrow of government. But solicitation as a crime, per se, was uncertain.
". . . .
 "Since solicitation makes criminal a communication that is likely to be within the peculiar knowledge of only several persons, more evidence is required than just the testimony of the person allegedly solicited, and there must be circumstances corroborative of both the making of the solicitation and that its making was in earnest."
The two elements of the crime of solicitation are: first, the solicitation and, second, the specific intent that another person engage in the conduct constituting a crime. In other words, given the requisite intent, the crime is in the communication to another to commit a crime; no resulting action is necessary by the person being solicited. People v. Burt,45 Cal.2d 311, 288 P.2d 503 (1955); People v. Berger, 52 N.Y.2d 214, 418 N.E.2d 1291, 437 N.Y.S.2d 272 (1981); People v. Lubow,29 N.Y.2d 58, 272 N.E.2d 331, 323 N.Y.S.2d 829 (1971). The offense is complete when the solicitation is made. It does not matter that the offense is never accomplished or that no overt act towards accomplishment of the solicited offense is made.People v. Rissman, 154 Cal.App.2d 265, 316 P.2d 60
(Dist.Ct.App. 1957); People v. Burt; 22 C.J.S. Criminal Law § 78 (1961). The crime of solicitation protects a significant public interest. The statute is concerned not only with the prevention of the harm that would result should the inducements prove successful, but also with protecting citizens from being exposed to inducements to commit crimes. People v. Burt; Peoplev. Lubow.
In resolving the issue at hand, we must construe that portion of our solicitation statute requiring corroboration of the testimony of the solicitee and proof of circumstances corroborating both the solicitation and the intent of the solicitor. Our courts have not previously been called upon to interpret this provision. In examining the solicitation statutes of other states, we find that Texas has a solicitation statute with a similar corroborative provision. Tex. Penal Code Ann. § 15.03(b) (Vernon 1974). It provides, "A person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation." It should be noted that the Texas statute uses the word "strong" in reference to the corroboration required, while our statute does not; otherwise, the corroboration portions of the statutes are, in substance, identical. We conclude from our research that the requirement that both the solicitation and intent be corroborated is found only in the Texas and Alabama statutes.[1]
In construing the corroboration provision in the Texas statute, the Texas courts have read the statute in conjunction with its *Page 180 
general statute regarding the testimony of accomplice witnesses, Tex.Crim.Proc. Code Ann. art. 38.14 (Vernon 1979), and have concluded that it requires no more than that there be evidence other than the testimony of the accomplice (solicitee) tending to connect the defendant with the offense committed, plus circumstances which corroborate the solicitation itself and the fact that the solicitation was made in earnest. SeeRichardson v. State, 681 S.W.2d 683, 686 (Tex.Dist.Ct.App. 1984), aff'd, 700 S.W.2d 591 (Tex.Crim.App. 1985); Bell v.Texas, 768 S.W.2d 790 (Tex.Dist.Ct.App. 1989). The Court of Criminal Appeals of Texas in Richardson v. State,700 S.W.2d at 594, stated the following:
"Tex.Penal Code Ann., Sec. 15.03(b) reads:
 "A person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation.
 "This section is analogous to Art. 38.14, V.A.C.C.P. and should be read in conjunction with it. Saunders v. State, 572 S.W.2d 944 (Tex.Cr.App. 1978). Art. 38.14 provides that a conviction may not be sustained upon the testimony of an accomplice unless it is corroborated by other testimony which tends to connect the defendant with the offense.
 "Reading Penal Code, Sec. 15.03(b) in conjunction with Art. 38.14, the corroboration in criminal solicitation cases must link the defendant to the crime at two separate stages. According to the language of 15.03(b) the evidence must be 'corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation.'
 "Appellant argues that use of the word 'strongly' in 15.03(b) suggests that a different standard should be applied, a standard more stringent than that used in Art. 38.14 cases. The practice commentary to 15.03 reads in relevant part,
 "Since solicitation criminalizes a communication that is likely to occur under circumstances of low visibility, subjection (b) requires more evidence than just the testimony of the person allegedly solicited. Furthermore, there must be circumstances corroborating both the making of the solicitation and that its making was in earnest.
 "Practice Commentary, V.T.C.A., Sec. 15.03 (Vernon's 1974).
 "This same consideration supports Art. 38.14. This does not indicate a different standard but only re-emphasizes the need for some additional safeguard. The additional safeguard provided by 15.03(b) is that the corroboration go to both the solicitation and the solicitor's intent.
 "The test used to evaluate such corroboration is to eliminate from consideration the accomplice testimony and then determine whether there is other incriminating evidence tending to connect the defendant with the crime. Adams v. State, 685 S.W.2d 661 (Tex.Cr.App. 1985).
 "It is not necessary that the corroboration directly link the defendant with the crime or that it be sufficient in itself to establish guilt. Shannon v. State, 567 S.W.2d 510 (Tex.Cr.App. 1978).
 "In determining the sufficiency of the corroboration, the court should consider the combined weight of the non-accomplice evidence even if it is entirely circumstantial. Rice v. State, 587 S.W.2d 689 (Tex.Cr.App. 1979); Jackson v. State, 516 S.W.2d 167 (Tex.Cr.App. 1974)."
We find the decisions of the Texas courts to be persuasive, and we adopt their reasoning in construing our statute. See also People v. MacEwing, 45 Cal.2d 218, 288 P.2d 257 (1955), where the Supreme Court of California used similar reasoning in construing corroboration requirements of its solicitation statute.
Our statute concerning accomplice witness testimony, §12-21-222, Code of Alabama 1975, is as follows:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission *Page 181 
of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
The method employed to determine whether evidence is sufficient to corroborate the testimony of an accomplice was set forth inLynn v. State, 477 So.2d 1365, 1369 (Ala.Cr.App. 1984), rev'd on other grounds, 477 So.2d 1385 (Ala. 1985), as follows:
 "The procedure commonly employed for determining whether sufficient evidence exists to corroborate the testimony of an accomplice . . . consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973); Ware v. State, 409 So.2d 886 (Ala.Crim.App. 1981) (emphasis supplied). The necessary quantum of corroborative evidence in such a case was addressed most recently in Scott v. State, 460 So.2d 1364 (Ala.Crim.App. 1983), reversed on other grounds, Ex parte Scott, 460 So.2d 1371 (Ala. 1984). In Scott, the Alabama Supreme Court stated that the 'corroborative evidence does not have to be very strong, or even sufficient to support a conviction, but merely must tend to link the accused with the offense,' citing Miller v. State, supra (emphasis supplied). Our controlling authorities have consistently held that corroborative proof need merely tend to connect the defendant with the commission of the offense. [Citations omitted.]"
"Sufficient corroboration of accomplices' testimony may be furnished by tacit admission by the accused, by the suspicious conduct of the accused, and by the association of the accused with the accomplice." Bates v. State, 461 So.2d 1, 4
(Ala.Cr.App. 1983), aff'd, 461 So.2d 5 (Ala. 1984). "Corroborate means to strengthen, to make stronger, to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony." Malachi v. State, 89 Ala. 134,140-141, 8 So. 104, 106 (1889).
In construing the corroboration requirements of our solicitation statute, § 13A-4-1(a), in conjunction with the requirements of our accomplice[2] witness statute, § 12-21-222, we hold that there must be evidence other than the testimony of the solicitee linking the defendant with the offense at two separate stages. The evidence must be corroborative of both the solicitation itself and the solicitor's intent that the other person criminally act on the solicitation. The requirements of the accomplice witness statute are the same, except that in the case of the solicitation statute, an additional safeguard has been provided, i.e., the corroboration must go to both the solicitation and the intent. The requirement that there be proof of circumstances corroborating both elements of the offense of solicitation does not mean that a different standard of corroboration from that required by the accomplice witness statute is required. It simply re-emphasizes the need for additional safeguard due to the nature of the crime itself. The additional safeguard is no more than that both the solicitation and the intent must be corroborated.
In the instant case, as in any case where the sufficiency of the evidence is tested by a motion for a judgment of acquittal, we may examine only that evidence which was before the court at the time the motion was made. LaBarber v. State, 455 So.2d 941
(Ala.Cr.App. 1984). This evidence *Page 182 
must be examined in the light most favorable to the state.King v. State, 505 So.2d 403 (Ala.Cr.App. 1987); Nichols v.State, 462 So.2d 992 (Ala.Cr.App. 1984).
We summarize the testimony of John David Strong as follows:
Strong testified that his first contact with appellant was in response to an advertisement which appellant placed in aSoldier of Fortune magazine. Strong met with appellant at a McDonald's restaurant in Birmingham, where appellant offered him $25,000 to kill his business partner, Land. Thereafter, Strong and appellant had meetings in Birmingham and talked on the telephone numerous times during the summer of 1985. Appellant wrote Land's name and telephone numbers on an index card and gave it to Strong. Appellant also wrote, "ref. by Mr. Bobby Frederick at Rosin Anchor div. of B'ham. BOLT Corp.," on the card for Strong to use as a reference when he contacted Land. On August 27 or 28, 1985, appellant gave Strong a .32 caliber pistol and a small plastic bag containing six .32 caliber bullets. Strong called Land at his office and told him he had an invention he wanted to talk to him about. Strong called Land back, and set up a meeting to discuss the invention. Strong bought women's clothes, a bottle of whiskey, a pair of handcuffs, and pills. He planned to force Land to put on the clothes and to consume the whiskey and pills. He then planned to kill Land and leave his body near a homosexual bar to make the killing appear to be homosexually related. On August 31, 1985, Strong met Land in Five Points and they proceeded to Homewood, where Strong picked up the sack containing the clothes, whiskey, handcuffs, and pills. Strong and Land then went to Leeds, where the attack, which was described in our original statement of facts, occurred.
The evidence presented by the state in its case-in-chief, which was independent of Strong's testimony, is as follows:
 (1) Appellant and Land had $1 million "key man" life insurance policies, each payable to the other upon death.
 (2) Appellant agreed, on July 17, 1985, to have a collateral assignment prepared so that the financial backer of Motion Dynamics would recover his investment from the insurance proceeds if Land or appellant died; however, this had not been accomplished prior to the attack on Land.
 (3) Land was shown an index card, taken from Strong after his arrest, which had Land's name and telephone numbers written on it, as well as "ref. by Mr. Bobby Frederick at Rosin Anchor div. of B'ham. BOLT Corp.," and Land stated that the handwriting "looked very familiar to [appellant,] Mr. Kimbrough's handwriting."
 (4) Motion Dynamics had dealt with Bobby Frederick of Birmingham Bolt Company, but Frederick did not know John David Strong by any name.
 (5) Appellant told the police that he knew John David Strong because he had talked to him at Lancaster Architecture about restoring old homes; however, Strong's position at Lancaster Architecture was only that of a groundskeeper.
 (6) Strong received several phone calls at Lancaster Architecture from a man called "Dusty." "Dusty" is appellant's nickname.
 (7) A page from a Soldier of Fortune magazine was found in Strong's room at Lancaster Architecture with the following advertisement circled and with stars drawn by it: "NEED A REAL PROFESSIONAL? Need quick confidential action? Contact this operative by phone or mail. Work alone or can provide team, short or long term, all considered. Absolute discretion given and expected. Dusty, P.O. Box 194, Palmerdale, AL 35123. (205) 681-0468." The telephone number in the ad was appellant's home telephone number.[3] *Page 183 
 (8) Telephone records show that calls were made from Motion Dynamics to Lancaster Architecture. The employees of Motion Dynamics, as well as Land, had never called Lancaster Architecture. (9) Appellant stated to Mr. Cohen, Motion Dynamics's chief engineer, that "if things worked out, it looked very much like it would just be he and I [Cohen] going to Chicago, that Charles [Land] would no longer be in the company." Appellant made this statement in mid-August, and there was a business trip to Chicago scheduled for the 8th of September.
 (10) Appellant discussed, throughout June, July, and August his and the employees' ability to run Motion Dynamics without Land.
 (11) Appellant also said in mid-August that "he was trying to work some deals so that he could get Charles [Land] out of the company" and "that Charles [Land] would probably be out of the company by the time school started."
 (12) On August 26, 1985, five days prior to the attack on Land, appellant was in a gun store which sold .32 caliber ammunition packaged in small plastic bags. According to the owner of the gun store, he knew of no other store that sold ammunition packages in that manner.
 (13) When Land told appellant that the man who attacked him was John David Strong and not Bob Johnson, appellant said nothing and displayed no visible reaction, even though he knew John David Strong.
 (14) Land was attacked by Strong, whom he did not know, and there was no other hypothetical motive for Strong to attack Land.
We find, from the above stated facts and the circumstances of Strong's attempt to kill Land, sufficient corroboration of the solicitation itself and of the appellant's intent that Strong act on the solicitation. The evidence presented by the prosecution satisfies the corroboration requirements of §13A-4-1. Even though any of these facts, when viewed individually, would possibly not warrant such a finding, when they are taken as a whole there can be little doubt that the totality of the evidence (other than Strong's testimony, of course) supports our decision. Thus, we find that the trial court did not err in denying appellant's motion for judgment of acquittal and that this case was properly submitted to the jury.
We have reviewed appellant's remaining contentions and find no merit in them. The judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] The requirements of corroboration in solicitation statutes vary from state to state. See, e.g., Cal. Penal Code § 653f
(West 1988) (two witnesses or one witness and corroborating circumstances of the charged violation required); Colorado Criminal Code § 18-2-301 (circumstances strongly corroborative of intent required). New York requires no corroboration. New York Penal Law §§ 100.00-100.20 (McKinney 1987).
[2] We find it unnecessary to determine here whether appellant and Strong were accomplices. The crime of solicitation being complete upon the solicitation being made with the requisite intent, the solicitee could hardly be an accomplice in the commission of the crime of solicitation; however, there are cases holding both ways. Compare People v. Berger, 52 N.Y.2d 214, 437 N.Y.S.2d 272, 418 N.E.2d 1291 (1981) (however, see dissenting opinion by Judge Jasen) with People v. Rissman,154 Cal.App.2d 265, 316 P.2d 60 (1957). In a criminal solicitation case prosecuted under § 13A-4-1, Code of Alabama 1975, corroboration is required whether or not the person allegedly solicited to commit the crime is an accomplice witness.
[3] Although appellant contends that the purpose of the advertisement he placed in the Soldier of Fortune magazine was to solicit employment for himself, the manner in which the advertisement is structured could have the tendency to lead readers to believe the person placing the advertisement was offering employment or would have employment available as part of his team. In other words, the advertisement would just as likely attract persons seeking employment as persons seeking to employ the services of the person who placed the advertisement. *Page 840