OPINION OF THE COURT
Dennis F. Bender, J.
The defendant was convicted upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]); two counts of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]); two counts of criminal use of a firearm in the first degree (Penal Law § 265.09 [2]); and assault in the second degree (Penal Law § 120.05 [2]). Pursuant to a decision of the Appellate Division, Fourth Department, the judgment was reversed and a new trial granted, due to errors during the jury selection process (269 AD2d 756 [4th Dept 2000]). The matter is now before the court upon remittal and the defendant has filed an omnibus motion. This decision and order addresses the defendant’s request for an order which precludes the People from using taped statements made by the defendant to a psychiatric evaluator.
Prior to the commencement of the first trial, the defendant had filed a notice of intention to assert the affirmative defense of extreme emotional disturbance, and accordingly notified the People pursuant to CPL 250.10. The People then arranged to have their own psychiatrist meet with the defendant. A tape-recorded interview was conducted by the psychiatrist in the presence of the District Attorney and the defense counsel, and subsequently a transcript of the interview was provided to each attorney. (CPL 250.10 [3], [4].)
After the retrial was ordered, the defendant withdrew his notice of intent to use any psychiatric defense and argues that in the event he takes the stand, the People should not be allowed to use any information gathered from the psychiatric examination of him. He argues first that he will suffer undue prejudice because any statements used would be taken out of context and would not be accompanied by expert interpretation. He further argues that the tape only exists by virtue of the statutory requirement of CPL 250.10 that required he *716 subject himself to the evaluation by the People’s expert. This being the case, the People’s right to use the tape or its contents ended when the notice to use a psychiatric defense was withdrawn. Allowing any use by the People would result in a violation of the defendant’s constitutional rights.
The defendant does not cite any authority for his position.
The People, in their response to the omnibus motion, state that it is their intent, should the defendant take the stand in his own defense, to cross-examine him with prior inconsistent statements gained from their psychiatric evaluator’s conversations with the defendant. The People do not intend to use information from the interview on their case-in-chief. Like the defendant, the People cite no legal authority.
The court was only able to find one case addressing the issue. In People v Barber (114 Misc 2d 409 [Sup Ct, Erie County 1982]), the court found that inculpatory statements made by the defendant during a pretrial psychiatric examination could be used for impeachment purposes as prior inconsistent statements, if the defendant chose to testify, and even though he had abandoned his defense of lack of criminal responsibility by reason of mental disease or defect. This the court found, despite the language of CPL 60.55 (2) which provides statements to the psychiatrist or psychologist “shall be inadmissible * * * on any issue” other than that of such defense. The question, said the court, is one of interpretation of the Legislature’s intent. “To construe [the word issue] in a manner tending to sacrifice or prejudice the public interests in maintaining judicial process as a truth-finding mechanism is to be avoided unless it clearly appears that the Legislature intended such a result (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 152).” (Supra, at 410.) There being doubt of the legislative intent, the court allowed the People to use the statements for impeachment purposes, preserving the rights of appellate review.
Barber’s utility in the within matter, however, lies as much in its difference as in its similarity. CPL 60.55 only applies if the defense is one of lack of criminal responsibility by reason of mental disease or defect (Penal Law § 40.15). No comparable statute exists when, as here, the notice was one for extreme emotional disturbance. Here, by its failure to act, the Legislature clearly did not wish to “sacrifice or prejudice” the “truth-finding mechanism” of the “judicial process.” (People v Barber, supra, at 410.)
Having considered the defendant’s specific arguments, the court finds them unavailing. Arguing that the defendant’s *717 statements would be taken “out of context” misses the point. That is what is needed. If the statements are used, preclusion of any reference to the fact the statements were made to a psychiatrist conducting a psychological evaluation will avoid any undue prejudice. Secondly, the statements, if used at all, will not be offered with any need for “the expert interpretation” that the defendant claims will be missing. It is the prior factual assertions of the defendant that will be relevant for impeachment, and not a psychiatric interpretation of them.
Lastly, this court fails to see a constitutional violation. The issue here is one of fairness, and the defendant’s claim of undue prejudice is unpersuasive. As put by the Court of Appeals, “ ‘[t]he protections afforded by constitutionally guaranteed rights may not be cavalierly converted into a license to commit peijury’ (People v McGrath, 46 NY2d 12, 29).” (People v Barber, supra, at 409-410.) Devoid from the defendant’s affidavits and oral argument was any reason why the Constitution would preclude the jury from being made aware of factual discrepancies between what he testifies to before them, and what he told the psychiatrist. .
Based upon the foregoing, the court rules that the People may use the statements made to the psychiatrist for impeachment purposes. The People may not, however, unless the defendant opens the door to the same, make reference to the fact the statements were made to a psychiatrist or that a prior defense of extreme emotional disturbance had been interposed and was withdrawn.
In the event the court ruled against him as it does, the defendant seeks a hearing to determine which of the prior statements may be used. This must be denied. Rhetorically, the court asked at oral argument if the defendant was prepared to state what the defendant’s testimony would be at trial if he chose to testify. Obviously, he was not, and is under no obligation to do so. The effect, nonetheless, is that even if it was appropriate for the court to make such a ruling, it could not do so unless and until the defendant testified. Only then could it could be determined what, if anything, the defendant said to the psychiatrist was inconsistent with his testimony.
As a procedural matter, it is noted no audibility hearing was requested. (People v Lubow, 29 NY2d 58, 68.) Such may be irrelevant and may be deferred. In the first instance, the defendant may choose not to testify, and even if he does, the contents of the interview may contain no information that would serve to impeach him. If impeachment becomes an issue, the People *718 will utilize the transcript to inquire whether or not the defendant recalls making the statement in question. If he denies the same, it may become necessary for the People to resort to having the psychiatrist testify (People v Grainer, 114 AD2d 285 [4th Dept 1986]), and an audibility hearing can be held at that time.